STATE of Tennessee

v.

Adrian R. ARNETT.

Supreme Court of Tennessee.

July 3, 2001.

Kenneth F. Irvine, Jr., Knoxville, TN, for the appellant, Adrian R. Arnett.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Gordon W. Smith, Associate Solicitor General, for the appellee, State of Tennessee.

## OPINION

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

The defendant was convicted of two counts of aggravated rape, one count of especially aggravated kidnapping, one count of aggravated robbery, one count of aggravated assault, and one count of setting fire to personal property. The trial court, finding sufficient evidence in the record to support application of several enhancement factors, imposed a total effective sentence of fifty years. The defendant appealed, challenging the sufficiency of the convicting evidence, the trial court's application of certain enhancement factors, and the imposition of consecutive sentences. The Court of Criminal Appeals merged the two aggravated rape convictions into a single conviction of aggravated rape but otherwise affirmed each of the other convictions. The court also concluded that three enhancement factors were improperly applied by the trial court and that the mitigating factor contained in Tennessee Code Annotated section 39–13–305(b)(2) was applicable in this case. Nevertheless, the court determined that the remaining enhancement factors warranted the effective fifty year sentence imposed. We granted this appeal to determine whether the sentences are excessive. Based on our review of the record and applicable legal principles, we hold that: (1) evidence in the record supports a finding that the defendant in this case treated the victim with exceptional mental cruelty, Tenn.Code Ann. § 40–35–114(5); (2) expert proof is not required to determine whether psychological injuries inflicted on a victim are "particularly great," Tenn. Code Ann. § 40–35–114(6); (3) evidence other than proof of orgasm is required to establish that the defendant raped the victim to satisfy a desire for pleasure or excitement, Tenn.Code Ann. § 40–35–114(7); (4) evidence does not support a finding that the crimes resulted in the victim's serious bodily injuries, Tenn.Code Ann. § 40–35–114(12). We affirm the

judgment of the Court of Criminal Appeals.

## BACKGROUND

On July 6, 1996, seventeen year old Brandon McDonald and his seventeen year old girlfriend Monica Smith drove from their homes in Morristown, Tennessee, to Knoxville to visit Monica's sister at the University of Tennessee. Shortly before midnight, the two teenagers left the campus to go to a restaurant in Knoxville's "Old City." Brandon parked his white Isuzu Rodeo in a parking lot near a nightclub and got out to talk to some friends he saw standing in the lot. Monica slid over into the driver's seat and participated in the conversation through the open window. When the group dispersed, Brandon walked around to the passenger side of the vehicle to discuss with his girlfriend their plans for the evening.

While they were talking, two males approached them. The taller of the two, later identified as fourteen year-old Brandon Moore, was putting on a mask as he was walking; the other male, later identified as the defendant, was carrying a gun. The defendant ordered the couple into the back seat. When Brandon McDonald resisted and started arguing with them, the defendant hit him in the side of the face with his gun. The couple climbed into the back seat and, at Moore's direction, gave him their wallets. The captors then got into the vehicle themselves-with the defendant in the driver's seat. The defendant gave the gun to Moore, put a bandana over his face, and started the vehicle.

When the Rodeo began moving, the assailants' attention was momentarily diverted away from the young couple. During that time, Brandon McDonald was able to jump out of the Rodeo. Although he injured his knee in the fall, he ran back to the nightclub where he had originally parked and reported the incident to several officers.

Monica testified at trial that after her boyfriend jumped out of the vehicle, the assailants closed the door and pointed the gun at her, warning her not to jump. The defendant kept yelling at Moore to "keep the gun on her" and to watch her so that she would not try to escape. Although Moore held the gun on Monica, he urged the defendant to "hurry up" and told him that "[t]his ha[d] gone too far," and to "let [him] out." Moore also assured Monica that she would not be harmed, but the defendant called the young girl a "white whore" and a "dirty bitch."

The defendant drove to a deserted golf course and parked the vehicle in a parking lot near some bushes. He got out of the vehicle, grabbed Monica by the wrist, and dragged her out of the back seat and over to a clump of bushes. He threw her to the ground. She landed on her back, and he ordered her to remove her clothes. When she did not comply, he took off her shorts and tore off her underwear. At one point she screamed, but he slapped her and then kept his hand over her mouth. Monica testified that the defendant then "tried to put his penis inside of [her], but he couldn't get it in. So, he used his finger, and then he tried again and put his penis inside of [her]." She testified that he ejaculated inside of her and that she felt some of it on the inside of her leg. When the defendant was finished, he stripped her completely naked and tied her hands and feet with articles of her own clothing, warning her not to leave. When she heard the vehicle drive away, she untied herself and sought help at a nearby residence. The woman living there called an ambulance, and Monica was taken to the hospital.

Meanwhile, after leaving Monica naked and bound, the defendant and Moore drove

to Babe Ruth Park near the Green Hills apartment complex. Officer Ron Trentham, a patrol officer with the Knoxville Police Department, testified that around 1:00 a.m. on July 7, he noticed two males, one taller than the other, climbing over a fence into the Green Hills complex. Although he cruised past the area where he saw them, they had disappeared from his view. However, a few minutes later, he saw the defendant walking back toward Babe Ruth Park. Officer Trentham stopped him to ask for his name and address, and he also searched the defendant for weapons. During this brief encounter, the officer noticed that the defendant was carrying a glass of rubbing alcohol and a cigarette lighter. The defendant told the officer that the glass belonged to the "other guy" who was with him earlier and that he was taking the glass to his mother. He also pointed to fresh scratch marks on his arms and explained that his girlfriend had just scratched him. The officer testified that during this conversation, the defendant was sweating profusely and appeared very nervous.

Two other witnesses, who were sitting outside a residence overlooking the park during the early morning hours of July 7, also testified to seeing two males walking away from the park and toward the apartment complex. They stated that approximately ten to fifteen minutes later, they recognized the shorter of these two males walking by himself back toward the park carrying a glass of liquid. A few minutes later, these witnesses heard a car horn and saw a white "jeep" on fire in the park. As they were about to call the fire department, the defendant passed them, laughing, and told them to "let the M—F—er

burn."[1] One of the witnesses recognized the man as having attended her middle school, and she identified him as Adrian Arnett, the defendant.

Dr. Ralph Kensell, the attending physician at the hospital where the victims were admitted the night of the attack, testified as to the victims' physical injuries. He stated that Brandon McDonald suffered only from a bruised face. Monica Smith suffered from an abrasion in the middle of her back and multiple bumps, bruises, and cuts to her legs. While performing a rape examination on Ms. Smith, Dr. Kensell collected samples of foreign bodily fluids found in her vaginal cavity, as well as a string of mucus found on her inner thigh, for the rape kit. There was no evidence of any tears, scrapes, or bruising to the vaginal area.

FBI agent Melissa Smrz testified that she conducted DNA testing on the fluids collected from Monica and found them to be semen. A comparison of DNA profiles from these semen samples with DNA profiles from the defendant's blood samples yielded a conclusive match. As evidence of this conclusiveness, Agent Smrz testified that the probability of someone other than the defendant having the same DNA profile found in the semen samples was "one in sixty-seven billion in the black population, one in one hundred and ten billion in the Caucasian population, one in one hundred and ninety billion in the southeastern hispanic population, and one in eighty-four billion from the southwestern hispanic population."[2]

The defense presented no evidence at trial but argued that the State had not met its burden of proving his guilt beyond a

---

1. The mother of one of these witnesses testified that she also heard the defendant state, "They can't get any fingerprints off of [the burned Rodeo], anyway."

2. Agent Smrz also testified that the global population totals approximately six billion people.

reasonable doubt. The jury found the defendant guilty on all counts in the indictment, which included two counts of aggravated rape (digital and penile), one count of especially aggravated kidnapping of Monica Smith, one count of aggravated robbery of Brandon McDonald, one count of aggravated assault of Brandon McDonald, and one count of setting fire to personal property.

At the sentencing hearing, the trial court, finding no mitigating factors, imposed a total effective sentence of fifty years for these offenses.[3] The trial court applied the following enhancement factors, see Tenn.Code Ann. § 40–35–114, to each of the offenses:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;

(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community.

In addition, the trial court applied three other enhancement factors to the defendant's sentence for especially aggravated kidnapping, see Tenn.Code Ann. § 40–35–114:

(3) The offense involved more than one (1) victim;

(5) The defendant treated ... a victim ... with exceptional cruelty during the commission of the offense; and

(6) The personal injuries inflicted upon ... the victim [were] particularly great.

Finally, the trial court applied the following additional enhancement factors in sentencing the defendant for aggravated rape, see Tenn.Code Ann. § 40–35–114:

(5) The defendant treated ... a victim ... with exceptional cruelty during the commission of the offense;

(6) The personal injuries inflicted upon ... the victim [were] particularly great;

(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

(12) During the commission of the [rape], the defendant willfully inflicted bodily injury upon another person....

On appeal, the Court of Criminal Appeals found that the defendant's two convictions for aggravated rape violated the prohibition against double jeopardy, and it modified the judgment to reflect a single conviction of aggravated rape. The intermediate court otherwise affirmed the judgments of conviction for each of the other offenses.

In its review of the sentences imposed upon the defendant, the Court of Criminal Appeals determined that the evidence was insufficient to support application of enhancement factors 114(5), that the defendant used exceptional cruelty; 114(7), that the offense was committed to gratify the defendant's desire for pleasure or excitement; and 114(12), that the defendant willfully inflicted bodily injury to the victim. The intermediate court also found that the mitigating factor found in section 39–13–305(b)(2), that the defendant voluntarily released the victim alive, applied to the especially aggravated kidnapping conviction. However, it concluded that "in view

---

**3.** Specifically, the trial court imposed two concurrent twenty-five year sentences for the aggravated rape convictions to be served consecutively with a twenty-five year sentence for the especially aggravated kidnapping convic-

tion. In addition, the court imposed concurrent sentences of eleven years for the aggravated robbery conviction and two years for the setting fire to personal property conviction for a total effective sentence of fifty years.

of the fact that the [defendant] bound the victim before leaving her, ... this mitigating factor [is entitled to] very little weight." The court affirmed the defendant's effective sentence of fifty years.

The defendant sought permission to appeal, which we granted, arguing that his sentences are excessive because (1) the trial court erroneously found, absent any expert proof, that the victim's psychological injuries were "particularly great," thereby incorrectly applying enhancement factor (6), and (2) the Court of Criminal Appeals failed to reduce his sentences despite finding that several enhancement factors were improperly applied. The State, in turn, argues that "exceptional cruelty," "desire for pleasure or excitement," and "serious bodily injury" are applicable enhancement factors and should have been upheld by the intermediate court. After carefully reviewing the record, we affirm the judgment of the Court of Criminal Appeals.

## STANDARD OF REVIEW

■ When a defendant appeals the length, range, or manner of serving a sentence, the appellate court shall review the record *de novo* with a presumption that the trial court's determination is correct. Tenn.Code Ann. § 40–35–401(a), (d) (1997). This presumption of correctness, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Pettus,* 986 S.W.2d 540, 543 (Tenn.1999). Appellate review requires analysis of (1) the evidence from the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing; (4) the nature and characteristics of the offense; (5) the information offered by the parties concerning enhancing and mitigating factors as found in sections 40–35–113 and –114; and

(6) the defendant's statement in his or her own behalf concerning sentencing. Tenn. Code Ann. § 40–35–210(b) (1997). If the appellate court determines that "the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings are adequately supported by the record," then the presumption is applicable, and the burden is on the challenging party to prove the impropriety of the sentence imposed. *State v. Hooper,* 29 S.W.3d 1, 5 (Tenn.2000) (citing *State v. Pike,* 978 S.W.2d 904, 926–27 (Tenn.1998)).

■ In this case, the defendant's convictions for aggravated rape and especially aggravated kidnapping constitute Class A felonies. In determining the appropriate sentences for these offenses, therefore, the court begins with the presumption that the defendant should receive a sentence in the midpoint of the range absent any enhancement or mitigating factors. Tenn.Code Ann. § 40–35–210(c). If the court does find the presence of enhancement factors or mitigating factors, it must first "enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Tenn.Code Ann. § 40–35–210(d), (e). The trial court is also required to set forth in the record specific findings of fact supporting the application of each factor. Tenn.Code Ann. § 40–35–210(f); *see also State v. Jones,* 883 S.W.2d 597, 599 (Tenn. 1994). On appeal, we will uphold the ultimate sentence imposed by the trial court as long as (1) it complies with the purposes and principles of the 1989 Sentencing Act, and (2) its findings are adequately supported by the record. *See* Tenn.Code Ann. § 40–35–210 Sentencing Commission Comments.

## ANALYSIS

At issue in this case is the applicability of several enhancement factors used by the trial court to increase the defendant's punishment for his convictions of especially aggravated kidnapping and aggravated rape. Enhancement factors may be considered only if they are "appropriate for the offense," and "not themselves essential elements of the offense." Tenn. Code Ann. § 40–35–114. It is well established that the " 'elements of the offense are *ipso facto* incorporated by the legislature into the base level sentencing for the offense. . . . To permit consideration of [an] element as an aggravating factor justifying an upward departure in sentencing . . . would be repetitive of the punishment the legislature has established for the crime.' " *State v. Jones*, 883 S.W.2d 597, 601 (Tenn.1994) (quoting *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223, 1236 (N.M. 1991)). Hence, in *Jones*, we explained that the purpose of these statutory limitations is to avoid the risk of repetitive punishment by excluding enhancement factors that (1) are not established by the particular facts and circumstances of the case, and (2) are based on facts which are also used to establish the elements of the offense charged. *Id.* at 601. We now address the applicability of each challenged enhancement factor in this case.

## I. APPLICATION OF "EXCEPTIONALLY CRUEL" ENHANCEMENT FACTOR

The trial court determined that the defendant had treated Monica Smith with exceptional cruelty, and consequently, it applied enhancement factor (5), Tenn.Code Ann. § 40–35–114(5), to his convictions for especially aggravated kidnapping and aggravated rape. The Court of Criminal Appeals, although recognizing the severity of these crimes, reversed, holding that there was insufficient evidence in the record to uphold application of this factor. The State urges this Court to uphold the trial court's decision, arguing that the facts in this case evince a finding of exceptional cruelty "separate and apart from the actions which constituted the offense[s]," *State v. Poole*, 945 S.W.2d 93, 99 (Tenn. 1997).

It is well established that proper application of enhancement factor (5) requires a finding of cruelty under the statute "over and above" what is required to sustain a conviction for an offense. *See State v. Embry*, 915 S.W.2d 451, 456 (Tenn.Crim.App.1995); *see also Poole*, 945 S.W.2d at 98 (requiring the facts in a case to "support a finding of 'exceptional cruelty' that demonstrates a culpability distinct from and appreciably greater than that incident to" the crime). In other words, such evidence must "denote[ ] the infliction of pain or suffering for its own sake or from the gratification derived therefrom, and not merely pain or suffering inflicted as the means of accomplishing the crime charged." *State v. Haynes*, No. W1999–01485–CCA–R3–CD, 2000 WL 298744, at *3 (Tenn.Crim.App. filed at Jackson, Mar. 14, 2000). Our courts have upheld the application of this factor based on proof of extensive physical abuse or torture, *cf. State v. Williams*, 920 S.W.2d 247, 259 (Tenn.Crim.App.1995) (rejecting application of this factor to aggravated rape conviction where there was no evidence of "extended length of torture, no weapons, nor any unusual type of abuse"), as well as proof of psychological abuse or torture, *see State v. Mills*, 1985 WL 4562, at *2 (Tenn. Crim.App. filed at Knoxville, Dec. 19, 1985) (holding that acts of mental cruelty, by themselves, can be just as vicious and leave just as many scars on a victim as acts of physical cruelty and finding evidence of mental cruelty where the defendants told the victim (1) that they were

going to kill her either by burning down her house or by "blowing her brains out"; (2) that they were going to "cut her and make a believer out of her"; and (3) that they would get her if she contacted the police).

■ Based on our *de novo* review of the record in this case, we uphold the trial court's application of enhancement factor (5) to the especially aggravated kidnapping conviction based on the defendant's *psychological* abuse of victim Monica Smith. As the record reflects, the victim was ordered into the back of her boyfriend's vehicle. She witnessed the defendant hit her boyfriend in the side of his head, hard enough to temporarily "daze him," thereby recognizing that the defendant was capable of, and perfectly willing to use, violence if she tried to resist. When her boyfriend managed to escape, the victim found herself on the floor of the moving vehicle, alone with two masked and potentially violent males in the middle of the night in an unfamiliar city.

When the vehicle stopped in a secluded area, the victim was physically dragged outside and thrown to the ground. She landed on her back as the defendant stood over her. She saw him unzip his pants, and she was then ordered to take off her clothes. When she did not comply, her clothes were forcibly ripped off of her body. The teenaged victim was eventually left alone, naked and bound. She was forced to untie herself, dress herself as best as she could as the defendant had taken some of her clothing, and, partially naked, knock on a stranger's door to seek help. In this case, the defendant went above and beyond placing the young victim in fear of her life; instead, the facts reveal evidence of exceptional mental cruelty separate and apart from the facts establishing the elements that constitute the offense of especially aggravated kidnapping. *Cf.*

*State v. Cage*, No. 01C01–9605–CC–00179, 1999 WL 30595, at \*10 (Tenn.Crim.App. filed at Nashville, Jan. 26, 1999) (rejecting application of this enhancement factor to especially aggravated kidnapping conviction where defendant threatened to shoot victim in the leg).

■ However, we find that there is insufficient evidence in this case to uphold application of enhancement factor (5) to the conviction of aggravated rape. While we acknowledge and in no way discredit the inherent pain and mental distress involved in being raped at gunpoint, the facts relied upon in applying this enhancement factor are the same facts that make this crime aggravated under the law. The record is absent evidence of *exceptional* cruelty, as contemplated by the legislature, separate and apart from the facts establishing the offense of aggravated rape. *See, e.g., Manning v.. State*, 883 S.W.2d 635, 639 (Tenn.Crim.App.1994) (rejecting application of this factor to aggravated rape and aggravated kidnapping convictions where defendant abducted the victim in broad daylight and forced her to participate in four separate sexual acts while holding a knife to her side). Accordingly, we conclude that the trial court correctly applied factor (5) only as to the especially aggravated kidnapping conviction.

## II. APPLICATION OF "PARTICULARLY GREAT PERSONAL INJURIES" ENHANCEMENT FACTOR

■ The trial court also found that the personal injuries sustained by the victim were "particularly great," and accordingly, it applied enhancement factor (6) to the offenses of especially aggravated kidnapping and aggravated rape. The Court of Criminal Appeals upheld the application of this factor to the aggravated rape convic-

tion,[4] noting that although the record does not support a finding that the victim's *physical* injuries were particularly great, it does support a finding that the victim's *psychological* injuries were greater than those ordinarily resulting from this offense. In making this determination, the intermediate court relied on the victim impact statement in which the victim described her trauma and her need for therapy involving both professional counseling and anti-depressant medication.

In his appeal, the defendant concedes that enhancement factor (6) contemplates psychological or emotional injuries, as well as physical injuries, provided that the evidence establishes that such injuries are "particularly great." *See State v. Smith,* 891 S.W.2d 922, 930 (Tenn.Crim. App.1994) (holding that the clear intent of the legislature was to make this enhancement factor broad enough to include emotional injuries in the term "personal injury"). However, he argues that due to the intangible nature of psychological injuries, proof of their existence necessarily requires expert testimony, which was absent in this case. Therefore, the defendant contends, the evidence does not support a finding that the victim sustained particularly great psychological injuries, and thus, this factor was erroneously applied. We disagree.

It is axiomatic that enhancement factors may be applied to increase a sentence only if such factors are established by the evidence. *See State v. Melvin,* 913 S.W.2d 195, 203 (Tenn.Crim.App.1995). While we recognize that all victims of crime, certainly victims of rape, must surely experience mental trauma, we are aware that no two crimes are exactly the same,

and no two victims react to this crime in the same manner. Because some victims may suffer even more severe emotional trauma than is normally involved with this offense, our legislature has seen fit to enhance the punishment for those defendants causing "particularly great" psychological injury. However, as the General Assembly has not specified the quantum of proof required to make this determination, we address this issue for the first time.

defendant maintains that the ability of a judge, most likely untrained in the field of psychology, to assess the extent of a victim's psychological injury requires the assistance of expert testimony. Although we agree that expert proof may help in the identification of "particularly great" psychological injuries, we decline to *require* expert proof. Instead, we hold that application of this factor is appropriate where there is specific and objective evidence demonstrating how the victim's mental injury is more serious or more severe than that which normally results from this offense. Such proof may be presented by the victim's own testimony, as well as the testimony of witnesses acquainted with the victim.

For example, in *Smith,* the trial court was found to have properly applied enhancement factor (6) to the offense of aggravated rape although no expert proof was offered. The court based its determination on the fact that the victim could not live in her own home for three months after her attack. Moreover, when visiting a friend overnight, the victim arose every thirty minutes during the night to make sure the doors and windows were locked. She also sought counseling "to help her cope with everyday life." *Smith,* 891 S.W.2d at 930.

---

4. The intermediate court analyzed the applicability of this factor only to the aggravated rape conviction; it did not expressly discuss its applicability to the especially aggravated kidnapping conviction.

Similarly, in *Williams*, enhancement factor (6) was found to be applicable where the presentence report provided specific examples of how the rape affected the victim's emotional well-being. In addition to experiencing periods of depression and low self-esteem, the victim stated that she was often unable to work, that she missed five weeks of college, and that her school-work suffered, thereby jeopardizing her scholarships. She also sought weekly counseling for a period of time. *Williams*, 920 S.W.2d at 259–60.

■ Specific, objective examples such as these of the disabling effects of the victim's mental injury obviate the need for expert proof. On the other hand, where the State does not offer specific evidence of the victim's "particularly serious" injuries, the trial court will not be justified in applying the enhancement factor to increase a defendant's sentence. *State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996); *see, e.g., State v. Melvin*, 913 S.W.2d 195, 203–04 (Tenn.Crim.App.1995) (rejecting application of this factor where the mother of the victim testified that the victim was "highly nervous," and where the victim refused to undergo a physical examination and psychological counseling, testifying that she can "deal with it … [and] can block things out if [she doesn't] want to remember").

In this case, the trial court looked to the victim impact statement submitted by the victim for evidence of her particularly great injuries. Specifically, the court observed that "[s]he has had to go through many counselors. She has had to take medication. She no longer lives a normal lifestyle as she did prior to [the rape]." In her statement, the victim describes how, for over two years after the crimes occurred, she has needed continuous psychological counseling and anti-depressant medication to help her overcome her con-stant fear of being attacked and to help her function on a daily basis. We agree that the victim's statement provides more than a general recount of her fears. Her discussion of the extensive counseling that she has undergone, as well as her need for prescription medication, provides specific and objective evidence of her particularly great psychological injuries. We therefore conclude that application of this enhancement factor to the defendant's especially aggravated kidnapping and aggravated rape convictions was appropriate.

## III. APPLICATION OF "DESIRE FOR PLEASURE OR EXCITEMENT" ENHANCEMENT FACTOR

We next address whether there is sufficient evidence in the record to support a finding that the defendant committed the offense of aggravated rape to gratify his desire for pleasure or excitement, thereby warranting an increased sentence pursuant to section 40–35–114(7). Perceiving itself to be bound by *State v. Kissinger*, 922 S.W.2d 482 (Tenn.1996), the intermediate court determined that ejaculation alone, absent any further proof that this rape was committed to satiate the defendant's desire for pleasure or excitement, was insufficient to support application of this factor. The State urges this Court to overrule *Kissinger* to the extent that it holds that a defendant's orgasm does not, in and of itself, prove the existence of this factor. Otherwise, the State contends, short of an admission or exclamation of motive by the defendant, this factor could never be applied in rape cases. We disagree.

■ Essential to proper application of this factor is the determination of the defendant's *motive* for committing the offense. *Kissinger*, 922 S.W.2d at 490. Specifically, with regard to rape cases, we have recognized that not every offender

commits this crime for the purpose of sexual fulfillment. *See State v. Adams,* 864 S.W.2d 31, 34–35 (Tenn.1993). Indeed, rape is often a sexual expression of aggression, committed out of the desire to express feelings of anger, or to "seek revenge, [or to] control, intimidate, or ... to just abuse another human being." *Id.* at 35. Furthermore, the violence of the act may, in and of itself, be exciting or pleasurable, regardless of any sexual enjoyment, which may be the motivating factor driving the defendant to commit the crime. *See Kissinger,* 922 S.W.2d at 490. Although the evidence in most cases involving sex crimes generally is that the defendant's pleasure or excitement was sexual in nature, we emphasize that a proper application of enhancement factor (7) may indeed include situations where the evidence demonstrates that the defendant's motivation was to gratify a desire for pleasure or excitement in ways other than sex.

 Understanding that there are multiple motivations for rape, we are not inclined to depart from that part of *Kissinger* which holds that evidence of ejaculation, by itself, does not prove that the rapist's motive was to gratify a desire for pleasure. *Id.* at 490. Accordingly, proper application of factor (7) requires the State to provide additional objective evidence of the defendant's motivation to seek pleasure or excitement through sexual assault. Because "pleasure" and "excitement" are affirmative mental states, this requirement is not unduly burdensome, nor does it necessarily require, as the State would argue, "an admission or exclamation of motive by the defendant." Instead, factor (7) may be applied with evidence including, but not limited to, sexually explicit remarks and overt sexual displays made by the defendant, such as fondling or kissing a victim or otherwise behaving in a sexual manner, or remarks or behavior demonstrating the

defendant's enjoyment of the sheer violence of the rape. *See Manning v. State,* 883 S.W.2d 635, 639–40 (Tenn.Crim.App. 1994) (applying this factor where defendant told the victim to "do it like you do it to your man"); *see also State v. Reid,* No. 01C01–9511–CC–00390, 1997 WL 311916, at *6 (Tenn.Crim.App. filed at Nashville, June 6, 1997) (applying this factor where defendant kissed and fondled the victim, told her they were going to "have some fun," and lubricated himself and the victim prior to penetration); *State v. Jacobs,* No. 01C01–9601–CC–00048, 1997 WL 576493, at *7 (Tenn.Crim.App. filed at Nashville, Sept. 18, 1997) (concluding that the evidence surrounding the rapes, such as the defendant kissing and fondling his victims, his characterization of the attacks as "flings" or "one night stands," and the regularity in which the attacks took place during a five week period, when considered in the aggregate, established that the defendant was motivated by a desire for sexual pleasure); *State v. Alvarado,* 961 S.W.2d 136, 152 (Tenn.Crim.App.1996) (applying this factor where defendant told a co-worker that he was going to go out and get drunk and have sex the weekend that he committed aggravated rape); *State v. Jones,* 953 S.W.2d 695, 699 (Tenn.Crim. App.1996) (applying this factor where defendant treated his daughter as if she were his girlfriend by wanting her to enjoy their sexual encounters and instructing her to participate by moaning and acting aroused).

 We first note that the trial court did not identify the specific grounds upon which it applied factor (7) other than to deem it appropriate "under all the facts and circumstances of the case." Nevertheless, our *de novo* review of the record leads us to affirm the intermediate court's determination that there is insufficient evidence of the defendant's motivation to rape

for sexual enjoyment or for gratification of a desire for any other type of pleasure derived from this act of aggression. Indeed, the defendant appeared devoid of any emotion other than animosity towards the victim. For example, his apparently limited communication with her consisted of insults and warnings not to escape, and his physical contact with her prior to the rape consisted of violently dragging her out of the vehicle and roughly throwing her to the ground. These facts, in and of themselves, are no different from those circumstances generally present in a crime of aggravated rape. Although the defendant did repeat his efforts to engage in intercourse after his first unsuccessful attempt, there is no specific indication that the rape was committed for a purpose other than to exert control over the victim and to hurt and humiliate her. Absent specific objective evidence of the defendant's motivation to seek pleasure or excitement, we conclude that this factor was not properly applied.

## IV. APPLICATION OF "BODILY INJURY TO THE VICTIM" ENHANCEMENT FACTOR

The State also argues that the trial court correctly applied enhancement factor (12) to the defendant's conviction of aggravated rape. Imposition of this factor requires a finding that, "[d]uring the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to [the] victim...." Tenn.Code Ann. § 40–35–114(12). The trial court

specifically based its determination on the fact that the defendant willfully "injured Ms. Smith when it was not necessary for him to do that.... [H]e dragged her from the vehicle. He threw her on the ground. He caused injury to her physically, and this is in addition to that necessary to actually accomplish the result." The Court of Criminal Appeals reversed, finding that application of this factor would be proper in this case only if the defendant inflicted "serious bodily injury" to the victim; as it found no proof of serious bodily injury, the intermediate court determined that this factor was incorrectly applied.

The trial court correctly found that the defendant did willfully inflict bodily injury, as defined in the statute,[5] upon Monica Smith during the commission of the rape. Nevertheless, "bodily injury" is an essential element to the offense of aggravated rape, and as we previously discussed, enhancement factors may not be applied if they are based on facts that are used to prove the offense. "To permit consideration of [an] offense as an aggravating factor justifying an upward departure in sentencing ... would be repetitive of the punishment the legislature has established for the crime...." See Jones, 883 S.W.2d at 601. Because the infliction of bodily injury on the victim is an essential element of the offense of aggravated rape, this fact may not also be used to further increase the punishment.

Furthermore, the record does not support a finding that *serious* bodily injury, as defined in the statute,[6] was inflicted

---

5. "Bodily injury" is defined in the Criminal Code as "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39–11–106(a)(2).

6. "Serious bodily injury" involves "(A) [a] substantial risk of death; (B) [p]rotracted unconsciousness; (C) [e]xtreme physical pain; (D) [p]rotracted or obvious disfigurement; or (E) [p]rotracted loss or substantial impairment of a function of a bodily member, organ,

in this case. Although the victim's examining physician testified that she sustained "bumps, bruises, and cuts" to her legs, there is no indication that the victim experienced "extreme physical pain," or otherwise suffered "protracted or obvious disfigurement" or "loss or impairment of a bodily function." Accordingly, based on our *de novo* review, we conclude that this factor was not properly applied.

## APPROPRIATE SENTENCE

 Despite our determination that two enhancement factors were inappropriately applied, we do not conclude that a reduction in the defendant's sentences is required. Among other offenses, the defendant, a Range I offender, was convicted of two Class A felonies each with a presumptive sentence of twenty years within a sentencing range of fifteen to twenty-five years, *see* Tenn.Code Ann. § 40–35–112. The trial court imposed the maximum sentence of twenty-five years for each felony based on the substantial weight given to each applicable enhancement factor, including three factors applicable to all of the offenses committed by the defendant that night: (1) the defendant has a previous history of criminal behavior;[7] (2) the defendant was the leader in the commission of the offenses; and (3) the defendant has a previous history of unwillingness to comply with the conditions of a sentence

involving release in the community.[8] Based on our *de novo* review, we conclude that the significant weight accorded to each enhancement factor, the aggregate number of factors applicable to these felonies, and the minimum amount of weight given to the one mitigating factor, *see* Tenn.Code Ann. § 39–13–305(b)(2),[9] warrants imposition of the maximum sentence for each felony.

 The trial court also found that the defendant qualified for consecutive sentencing on the ground that the defendant is a "dangerous offender whose behavior indicates little or no regard for human life and has no hesitation about committing a crime in which the risk to human life is high." *See* Tenn.Code Ann. § 40–35–115(b)(4). When a defendant falls within the statutory classification for eligibility to be considered for consecutive sentencing, the trial court must determine whether (1) the terms imposed are reasonably related to the severity of the offenses committed, and (2) the imposition of consecutive sentences is necessary in order to protect the public from further criminal acts by the offender. *See State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn.1995); *see also State v. Moore*, 942 S.W.2d 570 (Tenn. Crim.App.1996).

 The record fully supports consecutive sentences in this case. As the trial

---

or mental faculty." Tenn.Code Ann. § 39–11–106(a)(34).

7. The defendant's prior criminal history includes convictions for two misdemeanor assaults, disorderly conduct, resisting arrest, and a misdemeanor weapons offense.

8. The defendant received probation in three of his prior convictions; however, his probation was revoked for all three convictions.

9. This provision states, "If the offender voluntarily releases the victim alive ..., such actions shall be considered by the court as a mitigating factor at the time of sentencing."

Tenn.Code Ann. § 39–13–305(b)(2). The trial court rejected this factor, concluding that the legislature did not contemplate application of this mitigator when the victim is left "bound, in a wooded area, naked." The Court of Criminal Appeals reversed, holding that the plain language of this provision "imposes mandatory consideration of this mitigating factor if the victim is released alive." We affirm the intermediate court's interpretation and its decision to give this factor very little weight in light of the callous nature in which the defendant left the victim.

court described, this was a "horrifying crime with horrifying results," and we agree that consecutive sentences are necessary to protect the public from further violent criminal conduct by the defendant. We also agree that the sentence terms are reasonably related to the severity of the crimes based on the fact that the defendant was convicted of five separate criminal offenses arising from the terrible events of that one evening. *See, e.g., Gray v. State,* 538 S.W.2d 391 (Tenn.1976); *see also State v. Wilkerson,* 905 S.W.2d 933 (Tenn.1995). Accordingly, we hold that the consecutive sentences are warranted in this case.

## CONCLUSION

We have thoroughly examined the record in this case and have carefully considered the applicable sentencing requirements. Based on our *de novo* review, we conclude that the evidence supports a finding that (1) the defendant treated the victim with exceptional mental cruelty during the commission of the especially aggravated kidnapping, Tenn.Code Ann. § 40–35–114(5), and (2) that the victim impact statement provided sufficient evidence to establish that her mental injuries are "particularly great," Tenn.Code Ann. § 40–35–114(6). However, we also conclude that evidence of ejaculation is insufficient, in and of itself, to establish that the defendant committed the rape to "gratify his desire for pleasure or excitement," Tenn. Code Ann. § 40-35–114(7). Moreover, the evidence did not establish that the defendant's crimes resulted in the victim's "serious bodily injury," Tenn.Code Ann. § 40–35–114(12). Finally, we uphold the intermediate court's application of one mitigating factor to the especially aggravated kidnapping conviction, but, given the facts in this case, we conclude that it merits very little weight. Therefore, for the reasons given herein, we affirm the sentence as imposed by the trial court. The judgment of the Court of Criminal Appeals is affirmed.

Costs of this appeal are assessed to the defendant, Adrian R. Arnett, for which execution shall issue if necessary.