# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 21, 2004

## STATE OF TENNESSEE v. BOBBY NORTHCUTT

**On Direct Appeal from the Circuit Court for Warren County**
**Nos. F-9187, F-9255   Larry B. Stanley, Jr., Judge**

---

### No. M2003-02805-CCA-R3-CD - Filed October 7, 2004

---

The Defendant, Bobby Northcutt, pled guilty to two counts of rape of a child, and the trial court sentenced him to twenty-five years in prison on each count, ordering the sentences to run consecutively. The Defendant appeals his sentence, contending that the trial court: (1) improperly failed to apply one mitigating factor; (2) improperly applied two enhancement factors; and (3) erred when it ordered that his sentences run consecutively. Finding that reversible error exists, we reverse the judgments of the trial court and remand the case for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, J., and JOE G. RILEY, SP. J., joined.

Michael D. Galligan (on appeal), Robert W. Newman (at sentencing hearing), John P. Partin (at plea hearing), McMinnville, Tennessee, for the appellant, Bobby Northcutt.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Dale Potter, District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises out of the rape of two victims, G.P.M.[1] and C.M.[2] In case number F-9187, the Warren County Grand Jury indicted the Defendant on six counts of rape of a child, one count of

---

[1]This victim, whose date of birth is July 15, 1992, was less than thirteen at the time of the crime, and, in accordance with the policies of this Court, we refrain from using his name.

[2]This victim, whose date of birth is May 30, 1988, was less than thirteen at the time of some of the crimes against him, and, in accordance with the policies of this Court, we refrain from using his name.

aggravated sexual battery, and one count of aggravated child abuse, for his actions against G.P.M. In case number F-9255, the Grand Jury indicted the Defendant on fourteen counts of rape of a child and two counts of rape, for his actions against C.M.

At a plea hearing on both cases, the Defendant pled guilty to two counts of rape of a child. In case number F-9187, the State articulated the facts as follows:

> [The crime involved] oral penetration but there were multiple penetrations in regards to this victim. This . . . victim received genital warts from this [D]efendant and that's how this case was brought to our office's attention. The victim had sought out medical treatment or his family had, not aware of what was wrong with the child. They went to a doctor who then referred him to a specialist and in the process of that they discovered this child had genital warts. It's [the state's] understanding [that] after the investigation, the child [related] what all had occurred between him and the [D]efendant or what all the [D]efendant had done to him and at some point the [D]efendant gave a statement admitting his involvement and also was discovered with genital warts . . . .

In case number F-9255, the State told the trial court that the evidence would show the following:

> [The victim was] the brother to the other victim, [and this case involves] 14 counts of rape of a child, [and] two counts of rape. Those two counts of rape [are appropriate in] that they occurred after the child was over the age of thirteen. . . . [Initially,] the victim . . . did not want to discuss anything or talk about it but after . . . the family [was] seeking some counseling, he revealed to his psychologist . . . what had happened to him or parts of the details of what had happened with the [D]efendant and the child was then interviewed and gave details of the sexual penetration being oral and anal that had occurred to him . . . .

At the sentencing hearing, the Defendant's counsel informed the court that, upon the Defendant's request, he would not cross-examine either victim. G.P.M. testified that he was eleven years old and that he was sexually abused by the Defendant once or twice per week beginning when he was five or six years old. He said that the abuse included sexual penetration. G.P.M. testified that the Defendant lived in the same house as G.P.M. and G.P.M.'s brother, C.M., and babysat the boys for many years. G.P.M. testified that he never reported the abuse to his parents or anyone else because the Defendant threatened him with harm if he told anyone about the abuse. G.P.M. testified that he had to seek medical treatment as a result of the abuse.

C.M. testified that he was fifteen years old and that he was sexually abused by the Defendant once or twice per week from the time that he was four years old, in 1993, until the Defendant went to jail in 2002. C.M. testified that this abuse included sexual penetration and indicated that he did

not tell anyone about the abuse because he was frightened by the Defendant's threats. C.M. testified that he was undergoing counseling as a result of this abuse.

M.M.,[3] the boys' mother, testified that the Defendant lived with the family and babysat the boys from time to time. She said that she became aware that the Defendant was abusing G.P.M. after finding genital warts around his rectum. M.M. testified that, after discovering the genital warts, she took G.P.M. to a physician, who informed her that the genital warts were the result of a sexually transmitted disease. According to M.M., the physician told her that the only way G.P.M. could have contracted the genital warts was through sexual abuse by someone infected with the disease. M.M. indicated that she and her family wanted the court to impose an extensive sentence on the Defendant.

Dr. Deborah Watlington, a licensed psychologist, testified that she had been providing continuous therapy to G.P.M. since September of 2002. Dr. Watlington testified that G.P.M. suffered from hypervigilance, anxiety, sleep disturbance, and flashbacks regarding the Defendant's past abuse of him. Dr. Watlington also said that G.P.M. had difficulties at school, including difficulty concentrating, restlessness, hyperactivity, social withdrawal, and difficulty focusing on schoolwork. Dr. Watlington opined that these problems were a result of the Defendant's abuse of G.P.M. She said that G.P.M. described to her the Defendant's abuse of him, which included anal intercourse and other inappropriate touching of genitalia.

Dr. Watlington testified that she began treating C.M. in October of 2002. She testified that C.M. often accompanied G.P.M. and his parents to G.P.M.'s therapy sessions. She said that, after one such session, C.M. approached her and asked her to schedule an appointment for him. Dr. Watlington said that C.M. told her that he was also sexually abused by the Defendant. She said that he told her that the Defendant abused him prior to abusing G.P.M. Dr. Watlington testified,

> He had decided to disclose [the abuse to me] because he felt like I was someone he could trust and talk to, [he] knew [G.P.M.] was seeing me for counseling, and at that point felt that it was safe for him to disclose. At that time [the Defendant] was incarcerated. He hadn't disclosed [the abuse to anyone] prior to that due to fear.

Dr. Watlington stated that C.M.'s problems were more significant than his younger brother's because C.M.'s abuse was for a longer period. Dr. Watlington testified that C.M. questioned his own sexuality and feared that he was homosexual. Dr. Watlington said, "Any time there was any kind of reference in the media or students saying gay or homo, he was sure they were talking about him . . . ." According to Dr. Watlington, C.M. suffered from extreme sleep difficulties "to the point that the parents [sought] . . . medical relief to try to help with some of that anxiety." Dr. Watlington summarized that "[C.M.] is failing at school" and "continues to have very limited social outlets. . . . He has quite a few issues to work through." Dr. Watlington explained that, while C.M. is making improvement, it is "going to take some extensive therapy because of the length of time this went on."

---

[3]In the interest of protecting the victims' privacy we refer to their mother by her initials.

On cross-examination, Dr. Watlington acknowledged that the Defendant's decision not to cross-examine the victims was helpful to them. She also said that the drug Celexa, which the Defendant had been prescribed, was used to treat major depression and Seroquel, which the Defendant was also prescribed, was usually prescribed to treat schizophrenia. Dr. Watlington stated that some symptoms of schizophrenia include delusions, auditory hallucinations, and "just not being able to discern reality."

In addition to the testimony of the witnesses, the trial court admitted a presentence report into evidence, which it considered when determining the Defendant's sentence. According to the report, the Defendant was thirty-nine years old and single at the time of the sentencing hearing. The report showed that the Defendant had written an apology for his crimes, stating, "At the time of this offense I was living and working with [the victims' father]. I became sexually involved with his two sons. I'm sorry for what I did and for any hurt I caused anyone. I don't have any reasons or excuses for what I did." The report also contained a statement from the investigator for the District Attorney General:

> I . . . received information that [the Defendant] had sexual relations with [C.M.]. [C.M.] was interviewed by [the Tennessee] Department of Children Services and stated that [the Defendant] had been having sex with him since about 1994 and continued until 2002 when [the Defendant] went to jail . . . . [C.M.] stated that [the Defendant] penetrated him anally and orally at least one or two times a month during 1994 to 2002. [The Defendant] would have the child sleep with him and . . . this would occur where there were weapons in the room[,] and [the Defendant] would threaten the child that he would kill him or his family.

Finally, the report documented the Defendant's prior criminal record. The Defendant had been convicted of first degree burglary, several counts of driving while under the influence of an intoxicant, and two counts of theft of property.

With regard to mitigating factors, the Defendant claimed that he had a history of sustained employment, with an indication of a strong work ethic. According to the pre-sentence report, the Defendant spent a considerable amount of time doing logging work for G.M.[4], the victims' father. Prior to that, he worked at a metal fabrication plant. The Defendant claimed that his history of sustained employment, indicating a strong work ethic, was a valid mitigating factor. Additionally, the Defendant asked the court to consider in its sentencing decision his cooperation with the investigation, his guilty plea, his refusal to have the victims cross-examined in order to avoid further mental harm to them, and the fact that even a twenty-year sentence would effectively be a life sentence for him, given his age and his ineligibility for parole. Finally, the Defendant stated that he was being treated at a mental health center for his nerves, depression, and anxiety, and had been prescribed Celexa, Altace, and Seroquel.

---

[4] In the interest of protecting the victims' privacy we refer to their father by his initials.

The State filed seven enhancement factors with the trial court. The State requested that the trial court enhance the Defendant's sentence based upon his prior criminal history, which included several drunk driving citations, burglary, and theft of property. In addition, the State contended that the offenses involved more than one victim, the personal injuries inflicted upon one of the victims were particularly great, the Defendant was on bail when he committed the offense, and the Defendant had abused a position of private trust. Finally, the State claimed that the victims were particularly vulnerable because of their ages and that the offense was committed to gratify the Defendant's desire for pleasure or excitement.

When sentencing the Defendant, the trial court found that the following enhancement factors were applicable under Tennessee Code Annotated section 40-35-114 (2003): (2) the Defendant's prior criminal history; (5) the victims' particular vulnerability due to their ages at the time of the offenses; (7) the particular severity of the victims' injuries; (8) the Defendant's commission of the offense to gratify his desire for pleasure or excitement; and (16) the Defendant's abuse of a position of private trust. The trial court found as a mitigating factor that the Defendant had a sustained work history but afforded it little weight. As a result of its consideration of the enhancement and mitigating factors, the trial court imposed a twenty-five-year sentence for each conviction. The trial court ordered that the sentences run consecutively under Tennessee Code Annotated section 40-35-115(b)(5) (2003), which states:

> The court may order sentences that run consecutively if the court finds by a preponderance of the evidence that:
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

In relying on this statutory basis for imposing consecutive sentences, the trial court cited the enhancement factors it had already applied, the length of time that the abuse went on, the severe nature of the mental harm to both victims, and the threats that the Defendant made to keep the victims from reporting their abuse.

The Defendant appeals, contending that the trial court: (1) improperly failed to apply one mitigating factor; (2) improperly applied two enhancement factors; and (3) erred when it ordered that his sentences run consecutively.

## II. Analysis

When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d)

(2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We note that the defendant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

The Defendant pled guilty to two counts of rape of a child, a Class A felony, as a Range I offender. The sentence range for Class A felony, Range I offenders is fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). In calculating the sentence for a Class A felony, the presumptive sentence is the midpoint of the range, in the absence of enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement factors but no mitigating factors, the sentence must be set at or above the midpoint of the range. Tenn. Code Ann. § 40-35-210(d). If there are mitigating factors but no enhancement factors, the trial court must set a sentence at or below the midpoint of the range. Tenn. Code Ann. § 40-35-210(d). If there are both mitigating and enhancement factors, the trial court must adjust the sentence based on the weight it assigns to each factor. Tenn. Code Ann. § 40-35-210(d).

In the case under submission, the trial court found that five enhancement factors applied and one mitigating factor applied. The trial court decided that the mitigating factor was entitled to little if any weight, and thus sentenced the Defendant to the maximum allowed by the range, which was twenty-five years for each conviction. The trial court then ordered that the Defendant's sentences run consecutively under Tennessee Code Annotated section 40-35-115(b)(5).

## A. Mitigating Factor

The Defendant contends that his decision to forego cross-examination of the victims in the sentencing hearing is a mitigating factor under Tennessee Code Annotated Section 40-35-113(13) and that the trial court should have applied this factor. Tennessee Code Annotated section 40-35-113(13), is the "catch-all" of the statute, and provides that a trial court may apply as a mitigating factor "[a]ny other factor consistent with the purposes of this chapter."

We have found no case in which we affirmed the application of Tennessee Code Annotated section 40-35-113(13) in response to a defendant's decision to forego cross-examination of a victim. Instead, mitigating factor (13) is usually applied where the trial court found some condition of the defendant or some action or inaction by the defendant apart from the trial proceedings that necessitated leniency, but was not covered by the statute explicitly. For instance, in State v. Nicholas Williams, No. M1999-00780-CCA-R3-CD, 2001 WL 741935, at *12 (Tenn. Crim. App., at Nashville, July 3, 2001), *perm. app. denied* (Tenn. Dec. 17, 2001), we concluded that the trial court improperly failed to apply mitigating factor (13) based on the defendant's excellent work history and the fact that he had only one prior conviction. In State v. Christopher Max Hall, No. M1998-00180-CCA-R3-CD, 2000 WL 298592, at *4 (Tenn. Crim. App., at Nashville, Mar. 23, 2000), *perm. app. denied* (Tenn. Nov. 6, 2000), we affirmed the trial court's application of mitigating factor (13) where the defendant exhibited poor mental health by undergoing counseling and taking medication. In State v. Andra Lamar Dillard, No. 01C01-9804-CC-00157, 1999 WL 729205, at *9 (Tenn. Crim. App., at Nashville, Sept. 20, 1999), *no perm. app. filed*, we affirmed the trial court's application of mitigating factor (13) where the defendant showed that he had a troubled childhood and expressed remorse over his crime to police investigators.

We conclude that this case is distinguishable from the cases discussed above. The Defendant provides no authority, and we can find none, supporting the proposition that declining to cross-examine a victim must be applied by a trial court as a mitigating factor under Tennessee Code Annotated section 40-35-113(13). We hold that the evidence does not preponderate against the trial court's refusal to apply this mitigating factor.

## B. Enhancement Factors

The Defendant concedes on appeal that the trial court properly applied three of the five enhancement factors it found applicable, but contends that the trial court improperly applied two enhancement factors in calculating his sentence. Specifically, the Defendant asserts that the trial court erred when it found applicable enhancement factor (5), "A victim of the offense was particularly vulnerable because of age or physical or mental disability . . .," Tennessee Code Annotated section 40-35-114(5), and enhancement factor (8), "The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement," Tennessee Code Annotated section 40-35-114(8).

## 1. Enhancement Factor (5)

As to the application of enhancement factor (5), the Defendant first argues that the enhancement factor is never applicable to the offense of rape of a child because the offense, by definition, involves a victim of particular vulnerability due to age. The Defendant further argues that the State failed to meet its burden of showing that the victims were particularly vulnerable in this case. The Defendant insists that, under State v. Collins, 986 S.W.2d 13 (Tenn. Crim. App. 1998), the prosecution must show that the victim is "unable to resist, unable to summon help or unable to testify against the perpetrator." Id.

The Defendant is correct that an enhancement factor may only be applied to a particular offense if the enhancement factor is not an essential element of the offense. Tenn. Code Ann. § 40-35-114. However, the Tennessee Supreme Court has concluded that enhancement factor (5) can be applied to rape of child cases, so long as the victim was *particularly vulnerable* because of age or physical or mental disability. State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). The Defendant asserts that the trial court improperly applied enhancement factor (5) in this case because the State failed to meet its burden of proving that the victims were "particularly vulnerable." Particular vulnerability only exists when the victim is "incapable of resisting, summoning help, or testifying against the perpetrator." Adams, 864 S.W.2d at 35. Whether a given child is particularly vulnerable "is a factual issue to be resolved by the trier of fact on a case by case basis." Id.

Considering the evidence presented at the sentencing hearing the evidence does not seem to preponderate against the trial court's finding that the victims were particularly vulnerable. However, the United States Supreme Court's recent opinion in Blakely v. Washington, 124 S. Ct. 2531 (2004), calls into question the continuing validity of portions of our statutory sentencing scheme. In that case, the high court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." Id. at 2537. Finally, the Court concluded that "every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment. Id. at 2543.

In light of this recent decision by the United States Supreme Court, we must conclude that the rule in Blakely precludes application of this enhancement factor under these circumstances. In order for this enhancement factor to be properly applicable to the Defendant, it must be submitted to and found by a jury or admitted by the Defendant.

## 2. Enhancement Factor (8)

Next, the Defendant contends that the trial court improperly applied enhancement factor (8), "The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement." Tenn. Code Ann. § 40-35-114(8). The Defendant contends that, because sexual

assaults occur for many reasons other than excitement or pleasure, including feeling powerful or exacting revenge, under State v. Arnett, 49 S.W.3d 250 (Tenn. 2001), in order for enhancement factor (8) to apply, the State must provide some "additional objective evidence of the defendant's motivation to seek pleasure or excitement through sexual assault." Arnett, 49 S.W.3d at 262. According to the Defendant, enhancement factor (8) may be applied to rape cases where the State has put forward evidence showing that the offender sought excitement or pleasure "including, but not limited to, sexually explicit remarks and overt sexual displays made by the defendant, such as fondling or kissing a victim or otherwise behaving in a sexual manner, or remarks or behavior demonstrating the defendant's enjoyment of the sheer violence of the rape." Id.

The trial court applied enhancement factor (8) based on the testimony of the victims, the older of whom testified that the Defendant sexually abused him once or twice weekly from 1993 to 2002. However, the State provided no objective evidence showing that the offenses were committed to gratify the Defendant's desire for pleasure or excitement. In applying enhancement factor (8), the trial court reasoned that the only explanation for such a lengthy period of abuse would be that the Defendant was receiving pleasure or excitement from it, and "[it did] not appear [the abuse] was for punishment or any other reason . . . ."

We disagree with the trial court's findings. Evidence showing that the abuse went on for an extended period of time, without other evidence, does not necessarily reveal the Defendant's motive in perpetrating the offense. "Absent specific objective evidence of the defendant's motivation to seek pleasure or excitement," Arnett, 49 S.W.3d at 263, the trial court should not have applied enhancement factor (8). Accordingly, we conclude that the trial court improperly applied enhancement factor (8), notwithstanding the presumption of correctness afforded the trial court. Additionally, we note that the rule of law articulated by the United States Supreme Court in Blakely, precludes the application of this enhancement factor unless it is submitted to a jury or admitted by the defendant.

### 3. Other Enhancement Factors

The trial court additionally found that three other enhancement factors applied: enhancement factor (2) that the Defendant had an extensive prior criminal history; enhancement factor (7) that the injuries to the victims were severe; and enhancement factor (16) that the Defendant abused a position of trust. We first note that the Defendant has not contested the application of these enhancement factors on appeal, and any argument in that regard is likely waived. However, pursuant to Blakely, we conclude that the application of the enhancement factor (7) and (16) must be submitted to a jury or admitted by the Defendant before properly applied.

In light of our holding that the trial court improperly applied enhancement factors (5) and (8), we conclude that this case must be reversed and remanded for resentencing. On resentencing, the trial court should apply the law articulated in Blakely to determine whether enhancement factors (7) and (16) are applicable.

## C. Consecutive Sentences

Finally, the Defendant argues that the trial court erred by ordering his sentences to run consecutively. First, the Defendant asserts that ordering the sentences to run concurrently would have been sufficient to achieve the purposes of the trial court. In his appellate brief, the Defendant states that, given his age at sentencing, a concurrent sentence would ensure "that he would not be released until he was into his sixties . . . [and that] . . . this would have been sufficient to achieve whatever purposes the trial [c]ourt sought to achieve." Second, the Defendant asserts that the trial court improperly failed to inquire into other sentencing considerations after finding that Tennessee Code Annotated section 40-35-115(b)(5) applied to the case.

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one criminal offense, the court shall order the sentences to run either consecutively or concurrently. The trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence certain criteria enumerated in Tennessee Code Annotated section 40-35-115(b)(1)-(7). Tennessee Code Annotated section 40-35-115(b)(5) provides that a trial court may find that consecutive sentencing is proper where:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant between the defendant and victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Because we are remanding this case for resentencing, we conclude that we need not address this issue at this time. The trial court, on resentencing, will have more information before it upon which it can base a determination about whether this issue has merit.

## III. Conclusion

In accordance with the foregoing reasoning and authorities, we conclude that the recent United States Supreme Court decision in Blakely mandates that this case be remanded for resentencing. Therefore, we REVERSE the trial court's judgment and remand this cause for resentencing and reconsideration of all the issues presented herein.

_____
ROBERT W. WEDEMEYER, JUDGE