IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 4, 2003

## STATE OF TENNESSEE v. JARVIS WILLIAMS and JOHN WILLIAMS

**Direct Appeal from the Criminal Court for Shelby County
No. 01-08323-34     Joseph Dailey, Judge**

_____

**No. W2002-03010-CCA-R3-CD  - Filed December 23, 2003**

_____

Defendant Jarvis Williams was convicted of seven counts of especially aggravated kidnapping and four counts of aggravated robbery. He was sentenced to an effective term of 360 years in the Department of Correction for these offenses. In this direct appeal, he challenges the length of his sentence. Co-defendant John Williams was convicted of five counts of especially aggravated kidnapping and three counts of aggravated robbery. He was sentenced to an effective term of 161 years in the Department of Correction for these offenses. In this direct appeal, he challenges the sufficiency of the evidence and the length of his sentence. We affirm the judgments of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Charles Gilchrist, Jr., Memphis, Tennessee, for the appellant, John Williams. Robert Wilson Jones, Memphis, Tennessee, for the appellant, Jarvis Williams.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

Kimberly Hancock testified that, on the night of January 11, 2001, she was with her fiancee, Divin Wright, Divin's mother, Divin's step-father Jerome Carpenter, and Jerome Carpenter's brother, Omar Coleman. Kimberly wanted to retrieve some clothes that were at the home of her girlfriend, Marion Vaughn. Omar agreed to drive her to Marion's home, and Divin accompanied them.

When they arrived, Kimberly and Divin went into the house; Omar waited in the car. In the house were Marion, the Defendants John and Jarvis Williams,[1] Torrez Talley and Thaddeus Brown. Kimberly went upstairs and began to gather her clothes. She heard Defendant John coming up the stairs and heard him say, "somebody is fixing to die." Kimberly tried to run, but Defendant John grabbed her by the neck and threw her down the stairs. He followed her down and forced her to sit on the couch. Defendant Jarvis then forced Divin to sit on the couch next to her. Both Defendants were armed.

Defendant John accused Kimberly of having set up a break-in of his home by Divin's brother Oliver. Kimberly denied any knowledge of any break-in. Defendant John and Defendant Jarvis both told her that she was going to die because of her participation in the break-in. They also told Divin that he would pay for his brother's actions.

Torrez Talley and Thaddeus Brown left the house and returned with Omar. They made him strip and took his checkbook. Javon Bryant then arrived, pulling two guns and pointing one of them at Kimberly. Javon told Kimberly that she was going to help them find Oliver, and Javon and Defendant Jarvis forced Kimberly into a black car. Defendant Jarvis sat in the back seat with her and kept a gun on her. Javon Bryant drove.

Eventually, Defendant Jarvis called Oliver and arranged a meeting. Defendant Jarvis then called Defendant John and told him about the meeting. Javon Bryant then drove to the meeting place and forced Kimberly at gunpoint into Defendant Jarvis' purple Dodge Intrepid, which had been driven to the meeting place by Thaddeus Brown. Defendant Jarvis, Javon Bryant, Thaddeus Brown and Keith Ezell got in the car with her; Ezell was also armed. After a short time, Bryant and Ezell left the car and patrolled the area. When Oliver pulled up for the meeting, Bryant and Ezell got on either side of Oliver's car and told the two men in the car to get out.

In the car with Oliver were Jerome Carpenter, Oliver's fiancee Tonyell Somerall, and Tonyell's seven-year-old son, Jodeci. Oliver and Jerome were forced out of the car and told to strip. Javon Bryant hit Oliver in the head with a gun. Oliver was then forced into the trunk of the Intrepid, and Jerome was forced into the trunk of the car that Oliver had been driving, a Neon. Ezell took the wheel of the Neon, in which Tonyell and her son were still seated. Bryant returned to the Intrepid. Both cars then left the scene.

A short time later, both cars pulled over. Defendant Jarvis told Ezell to get Tonyell's identification and let her go. They got Jerome out of the Neon's trunk and placed him in the Intrepid's trunk with Oliver. They told Kimberly that they were going to let her go, but that they were going to kill Omar and Divin. They threatened to kill Kimberly and her daughter if she told the police. The men then dropped Kimberly off near her mother's house. She subsequently called the police. She testified that she was robbed of $120 that night by her assailants.

---

[1]At times we will differentiate between the two Defendants by referring to them by their first names only.

Divin Wright also testified. He explained that Oliver is his older brother. He stated that, when he entered Marion Vaughn's house, he saw both Defendants; Defendant John was Marion's boyfriend. Thaddeus Brown and Torrez Talley were also there. As Divin waited for Kimberly to gather her clothes, he saw Defendant John follow her upstairs. Kimberly then came "tumbling down" the stairs, and Defendant Jarvis grabbed Divin and "slammed [him] to the floor." Defendant Jarvis then forced him onto the couch while Defendant John forced Kimberly onto the other end of the couch. Both Defendants were pointing guns at Divin and Kimberly. The Defendants kept asking where Oliver was. Defendant John told Divin that they were going to kill him, Divin. Javon Bryant arrived and pointed two guns at them and asked Defendants John and Jarvis which one they wanted him to kill first. Divin testified, "It was like Jarvis and [John] were the leaders." Eventually, Defendant Jarvis "put the gun on" Kimberly and forced her out of the house.

Before he left with Kimberly, Defendant Jarvis went outside and returned with Omar. Omar was forced onto the couch with Divin. After Defendant Jarvis and Javon left, Defendant John held a pistol on Divin and forced him to give him everything in Divin's pockets. Keith Ezell then entered, wielding a shotgun. Ezell began beating Divin. Defendant Jarvis stripped Divin naked; Omar was also stripped. At some point Oliver and Jerome were brought into the house, also naked. Divin testified that both Defendants beat on him with their guns and fists. They also kicked him. Divin saw the assailants beat his brother Oliver as well. Defendants John and Jarvis picked Divin up off of the floor at one point and forced his head into the smoldering fireplace. Defendants John and Jarvis poured bleach on Divin and the other three victims. Eventually, Defendants John and Jarvis, together with Javon Bryant, Keith Ezell, Torrez Talley and Thaddeus Brown, forced Divin into the trunk of a car and told him that they were going to take him and his brother to Mississippi and bury them. Divin was having trouble maintaining consciousness, and the next thing he remembered was leaving the hospital.

Omar Coleman testified that he drove Kimberly and Divin to Kimberly's friend's house on the night in question. Kimberly and Divin went into the house, and he remained in the car. After about ten minutes, three men approached the car with guns and told him that he was "under arrest." Omar identified Defendant Jarvis as one of the armed men. The men forced Omar into the house, where Omar saw Kimberly and Divin on the sofa. He also saw Defendant John in the house. Defendant Jarvis told him to remove his clothes. Omar testified that, "before I could even take them off [Defendant Jarvis] just started ripping them off and kicking me in my side." After Omar was stripped, he was told to sit on the couch while his pants pockets were shaken empty. Defendant Jarvis and Defendant John were asking, "Where's my stuff?" and Omar saw Defendant Jarvis grab some of the money that fell out of his pants.

While he sat on the couch, Omar heard Divin and Kimberly being asked about Oliver's whereabouts. Defendant Jarvis then accompanied Kimberly out of the house for the purpose of calling Oliver from a pay phone. Omar testified that Defendant Jarvis was armed as he took Kimberly out of the house. After Defendant Jarvis left, Defendant John made some phone calls, and some other men arrived at the house. These men were armed.

Eventually, Jerome and Oliver were brought into the house. Jerome and Oliver were naked. The assailants, including the Defendants, forced the four victims to lay on the floor. Omar then saw the assailants beating Divin and Oliver. Omar was struck once in the head when he tried to escape. After the beatings, the assailants poured bleach on the victims. Omar and Jerome were then forced out of the house and into the trunk of Omar's Ford Focus. Defendant John was one of the men who forced Omar into the trunk, and was armed while doing so. Oliver and Divin were forced into another car. Omar testified that one of the other assailants, a man he knew as Red Von,[2] told them that they were going to be driven to Mississippi and buried there.

Tonyell Somerville, Oliver's fiancee, testified that she and Oliver and her son Jodeci were driving home from dinner on the night in question, and stopped to pick up Jerome. They then drove toward some destination of which she was unaware, because she dozed off. When she awoke, she saw several men surrounding the car. The men were armed and were yelling at them to get out of the car. Oliver and Jerome got out of the car; one of the men approached her as she sat in the front passenger seat and told her not to move. She saw the men striking Oliver in the head, and the men were telling Oliver and Jerome to remove their clothes. One of the armed men got into the back seat of the car with Tonyell's young son. She then saw the men put Oliver in the trunk of another car, an Intrepid.

Tonyell testified that she was held at gunpoint and was very afraid. One of the armed men got into the driver's seat and began driving away. This man had a sawed-off shotgun. Tonyell pled for her life and her child's life, and the man told her not to worry, that they were after Oliver. He asked her for money, and she gave him what she had in her purse. She also gave him a ring she was wearing. The man pulled the car over in an area with which she was not familiar and told her to get out with her son and start walking. She begged to keep her car because she did not know where she was. At this point, another man came up and told the driver to just get her identification, and then let her go with her car. She testified that she handed over her identification, and the man that had come up to the car told her, "Okay. We've got your ID. We have your address and your name. If you go to the cops and say anything then we will come back and kill you and your son." The men then removed something from her trunk; she did not know at the time what was in there. She then left and called the police at the first opportunity. Tonyell identified the Defendants as two of the men involved in her abduction.

Jodeci, Tonyell's son, also testified. He was seven at the time of the offenses, and eight when he testified. He stated that he saw Oliver being hit with a gun.

Oliver Wright testified that he and Tonyell and Jodeci and Jerome were in the car after dinner when he got a phone call from Defendant Jarvis. Defendant Jarvis told him that his car had broken down and asked Oliver to take him to an auto parts store for a battery. He recognized Defendant Jarvis' voice because he had known him for about a year. He drove to Defendant Jarvis' location and recognized the purple Intrepid; the hood was up. He got out of his car and began to approach

---

[2]Red Von was elsewhere identified as Javon Bryant.

Defendant Jarvis' car when he saw Defendant Jarvis and two other men named Javon and Keith Ezell "jump around the corner with guns." The men told him, "Don't move or, bitch, you're going to die." Javon then told him to "get naked" and hit him in the head with a pistol. After he was naked, Javon hit him in the head again with the pistol, and he and Defendant Jarvis forced him into the Intrepid's trunk at gunpoint. Javon broke Oliver's leg with the trunk lid. The car was then driven a few blocks and stopped. At that point, Defendant Jarvis and Javon opened the trunk and placed Jerome in the trunk with him. Jerome was also naked. They drove for another few minutes and stopped at Marion Vaughn's house, where the trunk was opened by Defendant Jarvis and Javon. The men told Oliver and Jerome to get out; both men were armed as were two other men near the car. The four assailants took the two victims into the house, where Oliver saw Divin and Omar, both naked. Defendant John, who was in the house, walked up to Oliver and hit him in the head with a pistol. Subsequently, Defendant Jarvis, Javon, Defendant John, Thaddeus and Ezell all beat him; he also saw them hitting Divin in the head with pistols. The men told Oliver that he was "going to die" that night. Oliver testified that they "put cigarettes out" on his back and poured bleach on him and the other victims. The four victims were then forced back outside and put into the trunks of the Intrepid and Focus. Oliver heard Defendant Jarvis' and Javon's voices in the Intrepid. The car was driven off and stopped at a place where Oliver could hear a train approaching. The police then arrived and let the victims out of the car trunks.

Oliver testified that he suffered various injuries from the attack, including a broken leg, broken ribs and burns on his back. He also testified that his assailants took some money and jewelry from him.

Both Defendants testified. Defendant John Williams testified that he "wasn't involved in none of these incidents" and had been "at home with [his] child and [the] baby's momma." Defendant Jarvis Williams testified that he had "no knowledge of what's going on" and had "no idea what this arises from."

The jury convicted both Defendants John Williams and Jarvis Williams of the especially aggravated kidnapping of Jerome Carpenter; the especially aggravated kidnapping of Oliver Wright; the especially aggravated kidnapping of Omar Coleman; the especially aggravated kidnapping of Divin Wright; the especially aggravated kidnapping of Kimberly Hancock; the aggravated robbery of Oliver Wright; the aggravated robbery of Omar Coleman; and the aggravated robbery of Divin Wright. The jury also convicted Defendant Jarvis Williams of the especially aggravated kidnapping of Jodeci Somerall; the especially aggravated kidnapping of Tonyell Somerall; and the aggravated robbery of Tonyell Somerall. The trial court subsequently sentenced Defendant John Williams to an effective term of 161 years. Defendant Jarvis Williams was sentenced to an effective term of 360 years.

In this direct appeal, Defendant John Williams challenges the sufficiency of the evidence supporting his convictions. Both Defendants challenge their sentences. We will first address the sufficiency of the evidence.

**SUFFICIENCY OF THE EVIDENCE**

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Especially aggravated kidnapping is committed when, using a deadly weapon, the accused knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty. See Tenn. Code Ann. § 39-13-305(a)(1). A person acts "knowingly" when he or she is "aware of the nature of [his or her] conduct." Id. § 39-11-302(b). Furthermore, an accused is criminally responsible for an offense committed by the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the [accused] solicits, directs, aids, or attempts to aid another person to commit the offense." Id. § 39-11-402(2).

Defendant John Williams was convicted of the especially aggravated kidnappings of Kimberly Hancock, Divin Wright, Omar Coleman, Oliver Wright, and Jerome Carpenter. With respect to Kimberly, the proof established that Defendant John forced her at gunpoint to sit on a couch in Marion Vaughn's house while he interrogated her about Oliver Wright. Defendant John also kept Divin Wright on the same couch at gunpoint, as well as later forcing Divin into a car trunk at gunpoint. Defendant John also participated in holding Omar Coleman at gunpoint in the house, and in forcing Omar at gunpoint into the trunk of a car. Defendant John behaved similarly with Oliver Wright and Jerome Carpenter, participating in confining these men in the house at gunpoint and later forcing them into car trunks. The Defendant's argument that the State failed to prove that

he acted "knowingly" in these exploits is ludicrous. In short, the evidence is more than sufficient to support all of these convictions, and this issue is without merit.

Defendant John Williams was also convicted of the aggravated robberies of Divin Wright, Omar Coleman, and Oliver Wright. Aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," accomplished with a deadly weapon. Id. §§ 39-13-401(a), 39-13-402(a)(1). Divin, Omar and Oliver each testified that, in conjunction with being stripped, beaten and confined at gunpoint, they were dispossessed of money and/or other valuables by their assailants, including Defendant John Williams. Thus, the evidence is more than sufficient to support all of these convictions, and this issue is also without merit.

## SENTENCING

Especially aggravated kidnapping is a Class A felony, see id. § 39-13-305(b)(1), and aggravated robbery is a Class B felony. See id. § 39-13-402(b). The presumptive sentence for a Class A felony is midpoint in the applicable range, see id. § 40-35-210(c), subject to being increased for applicable enhancement factors and decreased for applicable mitigating factors. See id. § 40-35-210(e). The presumptive sentence for a Class B felony is the minimum in the applicable range, see id. § 40-35-210(c), likewise subject to being increased and decreased. See id. § 40-35-210(e).

Defendant John was sentenced as a Range I offender. The presumptive sentence for his especially aggravated kidnapping convictions is therefore twenty years, with a maximum of twenty-five years and a minimum of fifteen years. See id. § 40-35-112(a)(1). The presumptive sentence for his aggravated robbery convictions is eight years, with a maximum of twelve years. See id. § 40-35-112(a)(2). After a hearing, the trial court determined that multiple enhancement factors applied to all of Defendant John's convictions, and accordingly sentenced him to the maximum term for each offense.

Defendant John does not challenge the length of each individual sentence. Rather, he challenges the trial court's decision to run all of his sentences consecutively for an effective term of 161 years.

When a defendant is convicted of multiple offenses, the trial court may order some or all of the sentences to run consecutively "if the court finds by a preponderance of the evidence that . . . [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Id. § 40-35-115(b)(4). In this case, the trial court found Defendant John to be such a "dangerous offender," and that he "should not be allowed to live in [the] community and in our society." Defendant John now contends that the trial court erred in determining him to be a dangerous offender, and further argues that his effective 161 term is "not reasonably related to the offenses involved."

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the

principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable and we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

Before a trial court may impose consecutive sentences on the basis of finding a defendant to be a "dangerous offender," the court must also "determine whether (1) the terms imposed are reasonably related to the severity of the offenses committed, and (2) the imposition of consecutive sentences is necessary in order to protect the public from further criminal acts by the offender." Arnett, 49 S.W.3d at 264. In Arnett, the defendant was convicted of aggravated rape, especially aggravated kidnapping, aggravated robbery, aggravated assault, and setting fire to personal property. The defendant abducted the female victim and her boyfriend at gunpoint, stealing their car in the process. After being struck in the face for resisting, the boyfriend was able to escape a short time later. The defendant drove the female victim to a secluded spot and raped her. He then bound her and left her naked, driving away in the stolen car. The defendant later set fire to the vehicle.

The defendant was sentenced as a Range I offender to the maximum twenty-five year terms for the aggravated rape and the especially aggravated kidnapping, both Class A felonies. The trial court then determined the defendant to be a "dangerous offender" and ordered the sentences to run consecutively, for an effective sentence of fifty years. Our supreme court affirmed the trial court's sentencing decision, finding that

[t]he record fully supports consecutive sentences in this case. As the trial court described, this was a "horrifying crime with horrifying results," and we agree that consecutive sentences are necessary to protect the public from further violent criminal conduct by the defendant. We also agree that the sentence terms are reasonably related to the severity of the crimes based on the fact that the defendant was convicted of five separate criminal offenses arising from the terrible events of that one evening.

Id. at 264-65.

Among the trial court's observations during the sentencing hearing for Defendants Jarvis and John Williams are the following:

I mean where's the cruelty scale where you determine whether pouring bleach on individuals, throwing them into fireplaces with hot coals, burning them with cigarettes, breaking canes over their bodies, telling them that they're going to die that night, that their graves have been dug, making them strip down, pile up in piles, making them walk out to the car naked and get in trunks of cars to be driven away . . .
I think this is just cruelty that's difficult to comprehend. How human beings could do this to other human beings, I don't understand . . . I don't see how any rational human being could look at this record and the proof that was presented in this case and not conclude that these two men are dangerous offenders, that these two men should not be allowed to live in your community and in our society, . . .

Defendant John Williams committed numerous horrifying crimes with horrifying results, against five individual victims. The reign of terror in which he participated requires a severe sentence and demands that he never be allowed to threaten other citizens again. The maximum effective sentence allowable is appropriate in this case, given the facts and circumstances surrounding Defendant John's vicious crime spree. Accordingly, we affirm the trial court's determination that Defendant John is a "dangerous offender" and further affirm the trial court's imposition of an effective sentence of 161 years. This issue is without merit.

Defendant Jarvis Williams also challenges his effective sentence of 360 years. Defendant Jarvis was sentenced as a Range II offender, which classification he does not contest. He does allege error in the application of enhancement factors, however, and further complains that the imposition of consecutive sentences is improper.

The presumptive Range II sentence for especially aggravated kidnapping is 32.5 years, with a maximum allowable term of forty years. See Tenn. Code Ann. §§ 40-35-210(c), 40-35-112(b)(1). The presumptive Range II sentence for aggravated robbery is twelve years with a maximum allowable term of twenty years. See id. §§ 40-35-210(c), 40-35-112(b)(2). The trial court sentenced Defendant Jarvis to the maximum term of forty years for each of his seven especially aggravated

kidnapping convictions, relying on numerous enhancement factors. The trial court also sentenced Defendant Jarvis to the maximum term of twenty years for each of his four aggravated robberies, again relying on numerous enhancement factors.

Defendant Jarvis concedes that the trial court properly applied at least three enhancement factors to each of his sentences, to wit:

> The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

> The defendant was a leader in the commission of an offense involving two (2) or more criminal actors; and

> The felon[ies] [were] committed while on . . . release status . . . from a prior felony conviction.

Id. § 40-35-114(2), (3), (14). The proof supports the application of these three enhancement factors, and they are sufficient in and of themselves to justify imposition of the maximum terms allowable. We therefore deem it unnecessary to address Defendant Jarvis' allegations concerning the trial court's application of other enhancement factors, and affirm the individual sentences imposed.[3]

We also affirm the trial court's determination that Defendant Jarvis is a dangerous offender, and that the imposition of consecutive sentences is necessary in order to protect the public from further criminal acts by Defendant Jarvis. With respect to Defendant Jarvis' contention that an effective 360 year term is not reasonably related to the severity of these multiple violent offenses, we disagree. We note that our supreme court has repeatedly upheld sentences consecutive to a death sentence. See State v. Reid, 91 S.W.3d 247, 312 (Tenn. 2002), and cases cited therein. Obviously, particularly brutal crimes justify sentences that actually exceed the offender's lifespan. Such is the case here.

Finally, as pointed out by the State, both of the Defendants were on probation at the time they committed the instant offenses. This circumstance independently supports the imposition of consecutive sentences on both Defendants. See Tenn. Code Ann. § 40-35-115(b)(6).

In conclusion, we affirm the Defendants' convictions and sentences. The judgments of the trial court are affirmed.

---

[3]We recognize that three of Defendant Jarvis' kidnapping victims, Kimberly, Tonyell, and Jodeci, were released voluntarily. The voluntary release of the victim of an especially aggravated kidnapping is to be considered as a mitigating factor at sentencing. See Tenn. Code Ann. § 39-13-305(b)(2). In this case, while Kimberly and Tonyell were voluntarily released, they were also threatened with dire consequences if they reported the Defendants' crimes to the police. In our view, also espoused by the trial court, this lessened the weight of this mitigating factor such that, in light of the multiple enhancement factors properly applied, the maximum terms are appropriate.

_____
DAVID H. WELLES, JUDGE