# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 22, 2008

## STATE OF TENNESSEE v. JULIO VILLASANA

**Appeal from the Criminal Court for Davidson County**
**No. 2006-D-3105      Mark J. Fishburn, Judge**

---

**No. M2007-01923-CCA-R3-CD - Filed June 10, 2008**

---

The Defendant, Julio Villasana, pled guilty to one count of aggravated vehicular homicide, a Class A felony, and to one count of leaving the scene of an accident involving death, a Class E felony. He was sentenced as a Range I, standard offender to twenty-five years for the former and to two years for the latter. The sentences were ordered to be served concurrently. On appeal, he argues that the trial court erred by imposing the maximum sentence for the Class A felony. We affirm the sentences ordered by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Emma Rae Tennent, Assistant Public Defender, Nashville, Tennessee, for the appellant, Julio Villasana.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

At the Defendant's guilty plea submission hearing, the State set out the factual background for his offenses. On August 1, 2006, fifty-one-year-old Charlie Darrington (the victim) was riding his motorcycle in Davidson County. The victim was driving southbound on Briley Parkway, near Robertson Avenue, when the Defendant hit him head-on. The thirty-four-year-old Defendant was driving a sport utility vehicle on the wrong side of the roadway—northbound in the southbound lanes of Briley Parkway. The victim died from injuries sustained in the crash.

After the wreck, the Defendant did not stop to help the victim; he fled from the scene on foot. Witnesses at the scene gave police a description of the Defendant, and he was apprehended a short time later and brought back to the crash site where the witnesses positively identified him as the driver who killed the victim.

Because the Defendant exhibited signs of intoxication, field sobriety tests were administered, and the Defendant failed them. He then signed an implied consent form that was provided to him in Spanish because his primary language is Spanish. By signing the form, he agreed to give a blood sample, which revealed that his blood alcohol level was .23 percent.

Additionally, for the purpose of establishing all the elements of aggravated vehicular homicide,[1] the State announced that the Defendant was previously convicted of driving under the influence (DUI) approximately one year earlier (on July 7, 2005) in Kentucky.

Following the State's establishment of the foregoing factual background, the Defendant agreed that those facts were "true and correct."

Subsequent to the guilty plea submission hearing, a sentencing hearing was held during which the State introduced certified judgments establishing that the Defendant had also been previously convicted of DUI on two other occasions: December 4, 1991; and October 12, 1996. His criminal record also included prior convictions for fleeing from a probation officer and assault.

Special Agent Craig Dickhaus of the United States Immigration and Customs Enforcement Office testified that the Defendant had also been previously arrested and charged with DUI in Texas on August 14, 1997; at the time of the instant offense, he was released on bail for the Texas DUI, and it had not been adjudicated. Special Agent Dickhaus further stated that the Defendant had two prior federal convictions for illegally entering the United States. Further, he had been officially deported from the United States three times, and, on eleven other occasions, he agreed to voluntarily return to Mexico rather than appear before an immigration judge. At the time of the sentencing hearing, the Defendant was also being prosecuted by federal authorities for illegal reentry after deportation.

The victim's wife, Susan Darrington, testified that she and the victim were married for twenty-four years, and they had one daughter. The victim had been an executive at Gibson Guitar Corporation and a musician. Mrs. Darrington read a prepared statement detailing the extensive, negative effects her husband's untimely death has had on her and her daughter's life. She asked the

---

[1] The offense of aggravated vehicular homicide, as relevant to the Defendant's case, is defined by Tennessee Code Annotated section 39-13-218(a)(3)(A). Under that section, a person commits the offense of aggravated vehicular homicide if there was, "at the time of the [vehicular homicide], twenty-hundredths of one percent (.20%), or more, by weight of alcohol in the defendant's blood and the defendant has one (1) prior conviction for" driving under the influence. See Tenn. Code Ann. § 39-13-218(a)(3)(A); see also Tenn. Code Ann. § 39-13-213(a)(2) (providing that one definition of the offense of vehicular homicide is the reckless killing of another by the operation of an automobile as the proximate result of the driver's intoxication).

court to impose the maximum sentence possible because the Defendant made the choice to drive intoxicated, and he "should have to face the consequences of that choice."

The Defendant testified that he "made a mistake [by] drinking a beer" before driving. He said he was lost in Nashville and trying to enter Interstate 40 when he turned off of Charlotte Pike and began traveling the wrong way down Briley Parkway. He apologized to Mrs. Darrington for the "great pain" he has caused in her life. He said he would have never committed the offense "on purpose because I am not a bad person, but I made the mistake to drink. I'm guilty."

On cross-examination, he denied laughing on the night of the offense when a witness asked him why he was driving down the wrong side of the road. He also denied running from the scene, despite the fact that he pled guilty to leaving the scene of an accident involving death. However, he admitted that he had consumed "six to eight" beers that night. The Defendant also admitted that he had three previous convictions for DUI and would have had a fourth if he had not been deported rather than being prosecuted. Further, he agreed that he had illegally reentered this country "on at least [fifteen] occasions."

After hearing the arguments of counsel, the trial court sentenced the Defendant as follows:

In determining the appropriate sentence for these offenses, the court has considered the evidence presented at the sentencing hearing, the presentence report, the sentencing principles embodied in [Tennessee Code Annotated] 40-35-103, the arguments made as to the appropriate sentence that should be imposed since alternative sentencing is not permitted in the aggravated vehicular homicide, the nature and characteristics of the criminal conduct involved, the evidence and information offered on enhancement and mitigating factors, the statement made by the Defendant at the sentencing hearing and the Defendant's potential for rehabilitation and treatment, as well as the general purposes contained in [Tennessee Code Annotated] 40-35-102. The court finds in both cases, counts one and three, that [the Defendant] is a range one offender, there being no prior felony convictions on his record. The court has also considered the enhancement factors of [Tennessee Code Annotated] 40-35-114. The court finds that number one applied, that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. I will agree that none of those are felonies, but notwithstanding that, [the Defendant] has a lengthy record, particularly as it relates to motor vehicle offenses involving the use of alcohol having been convicted in Kentucky on July 7, 2005, and in Texas on two occasions, April 30, 1997 and December 4, 1991. The court finds that to weigh heavily in this particular case because the case that he's before this court on today is a vehicular homicide. I want to make it clear for the record, two of those, I mean, one of those DUI's, I cannot consider for enhancement purposes because it's an element of the offense, and I'm not going to, but the reality of it is, he had two other ones in addition to that. The one, almost a year to the day, a year and three weeks prior, in Kentucky,

prior to the incident that occurred here in Nashville on August 1st of 2006. The court considers that to be of great significance and places a great deal of weight on that.

Further, the trial court found that, because a condition of his release in his prior federal cases was that he live in Mexico, the Defendant had a previous history of unwillingness to comply with conditions of a sentence involving release in the community. See Tenn. Code Ann. § 40-35-114(8). The court specifically declined to apply as an enhancement factor that the Defendant had no hesitation about committing a crime when the risk to human life was high, finding that it was inherent in the offense of aggravated vehicular homicide. See Tenn. Code Ann. § 40-35-114(10).

As for mitigating factors, the court found that the Defendant had a relatively positive work history and that he showed "some remorse." See Tenn. Code Ann. § 40-35-113(13). However, the court also found that, by denying that he fled from the scene when the evidence clearly established otherwise, the Defendant lacked candor before the court and was not a credible witness. Further, the court considered a number of other factors, including his potential for rehabilitation, his character and social history, family and community support, his history of compliance and non-compliance with court-ordered programs, the financial support he provided to his family, and available rehabilitative programs.

Ultimately, the court found that the maximum sentence was necessary in the Defendant's case for the following, additional reasons:

> [Nothing] short of the maximum sentence [will] protect the citizens from [the Defendant's] outright disregard and flagrant violations of the laws of the State of Tennessee. Though there's certainly some merit and some good things under the law that [the Defendant] has demonstrated, they are significantly and greatly outweighed by his continual and habitual violations of the rules of the road because he continually drives. Even when he's sober, he's illegally driving and therefore I'm going to sentence [the Defendant] to 25 years as a range one offender. I find that's necessary to avoid depreciating the seriousness of the offense, and it is serious not only because a person died as a result of it, [but also] because . . . of his lengthy violation of the driving laws of this State, particularly as they relate to the use of alcohol. I also find that it is necessary to protect society by restraining a defendant who has a long history of criminal conduct and an obvious propensity to continue in criminal activities. I also find that it's necessary because less restrictive measures have been tried in the past, specifically the Kentucky DUI, when I think the only thing he received was a fine and short probationary period.

Lastly, the court ordered that his two-year sentence for leaving the scene of an accident involving death would be served concurrently.

**ANALYSIS**

On appeal, the Defendant argues that the trial court erred in imposing the maximum sentence allowable by law. Specifically, the Defendant asserts that this Court should find that his sentence is excessive because the trial court misapplied the enhancement factor regarding his prior criminal activities, and because it did not lend applicable mitigating factors sufficient weight.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

First we note that, based on our review of the record, we conclude that the trial court followed the statutory sentencing procedures, imposed a lawful sentence, gave due consideration and proper weight to the factors and principles set out under our sentencing law, and that its findings of fact are adequately supported by the record. Accordingly, we will presume that the determinations made by the trial court are correct. See Ashby, 823 S.W.2d at 169.

The Defendant argues that the trial court misapplied Tennessee Code Annotated section 40-35-114(1), which states: "The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." The Defendant does not dispute that he was previously convicted of all of the offenses enumerated at his sentencing hearing, including the three previous DUI convictions. Rather, he asserts that because the State allegedly failed to supply him with copies of the criminal convictions it intended to use for enhancement purposes during discovery, the trial court should not have considered them in enhancing his sentence. We are not persuaded by this argument. First, the record shows that the State made the Defendant's criminal record available to him during discovery. Second, the Defendant's prior record is set forth in the presentence report. Third, the Defendant testified at his sentencing hearing and admitted the validity of the criminal history detailed in the presentence report.

Similarly, we are not persuaded by the Defendant's argument that the trial court erred by not affording applicable mitigating factors enough weight. Initially, we note that the weight to be given to enhancement and mitigating factors is left within the sound discretion of the trial court. See State v. Terrell Antron Greer, No. W2007-01192-CCA-R3-CD, 2008 WL 886309, at *6–7 (Tenn. Crim. App., Jackson, Apr. 2, 2008) (explaining that under Tennessee's new sentencing laws, enacted in response to Blakely v. Washington, 542 U.S. 296 (2004), statutory mitigation and enhancement factors are advisory and not mandatory). Further, we conclude that because of the egregiously reckless nature and seriousness of the Defendant's crime, the trial court was justified in ruling that applicable enhancement factors outweighed factors in mitigation. The trial court did not err by imposing the maximum sentence in this case.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE