# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs September 19, 2012 at Knoxville

## STATE OF TENNESSEE v. MEMORY GAYLE HALL

**Appeal from the Circuit Court for Williamson County**
**No. II-CR03550      James G. Martin, III, Judge**

---

**No. M2012-00499-CCA-R3-CD - Filed December 27, 2012**

---

The Defendant, Memory Gayle Hall, entered open pleas of guilty to driving under the influence of an intoxicant (DUI), speeding, and failing to provide evidence of financial responsibility. At sentencing, the trial court ordered her to serve forty days on consecutive weekends in the county jail, followed by probation for the balance of the eleven months and twenty-nine day sentence. She challenges the trial court's denial of full probation, contending that she was a favorable candidate. After reviewing the record and applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Vanessa Pettigrew Bryan, District Public Defender; and Robert W. Jones, Assistant Public Defender, for the appellant, Memory Gayle Hall.

Robert E. Cooper Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Kim R. Helper, District Attorney General; Kelly A. Lawrence and Mary Katharine White, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Defendant was indicted for DUI, a Class A misdemeanor; speeding, a Class C misdemeanor; and failing to provide evidence of financial responsibility, a Class C misdemeanor. The Defendant entered open pleas to all of the offenses on January 24, 2012. That same day, the Defendant's sentencing hearing was held. The relevant facts from that

hearing were as follows.

Sergeant Ronald Conner testified that he was a patrol sergeant for the City of Fairview, and on November 8, 2010, around 7:00 p.m., he was on duty when he encountered the Defendant. He testified that as he made a right onto Fairview Blvd., approaching Park Village Apartments, he noticed a car that was exceeding the speed limit. After verifying via radar that the car was in fact going fifty-eight miles-per-hour in a forty-five miles-per-hour zone, he turned to pursue the car. The car then turned into the Tractor Supply parking lot; the Tractor Supply store was closed. The Defendant parked in a handicapped parking spot. Sgt. Conner explained that Reserve Officer Matthew Tidwell, who was "just learning," was also with him in the patrol car that day. Off. Tidwell approached the car and asked the Defendant for her license, registration, and proof of insurance. The Defendant was having trouble producing the requested documents, so Sgt. Conner approached the car to assist Off. Tidwell. Sgt. Conner approached the driver's side of the Defendant's car and noticed that "her eyes were glassy and watery, and she was -- like she was having trouble concentrating on what Off. Tidwell was asking her, so [he] asked her again to produce her license, registration and proof of insurance." The Defendant finally produced both her license and registration but informed Sgt. Conner that she did not have insurance.

After verifying the validity of her license, Sgt. Conner had the Defendant perform the following field sobriety tests: the horizontal gaze nystagmus, the one-leg-stand, and the walk-and-turn tests. The Defendant denied that she had consumed any alcoholic beverages or medication that day but later admitted to consuming Xanax around 5:00 p.m. Sgt. Conner then testified that the Defendant performed unsatisfactorily on both the one-leg-stand and walk-and-turn tests. The video recording of the Defendant performing the field sobriety tests was then played for the judge without objection.[1] The video supported Sgt. Conner's testimony regarding the Defendant's performance of the field sobriety tests. Sgt. Conner testified that he then placed the Defendant under arrest for driving while impaired. Sgt.Conner explained that he also searched the Defendant's purse and found three prescription bottles and a straw that was made from an ink pen.[2] He testified as to the contents of each bottle: one pill bottle was empty, and it was prescribed to Jonathan Hall, the Defendant's husband; a second pill bottle contained twenty whole pills and three half pills of Alprazolam/Xanax, two milligrams; and the final pill bottle contained five whole pills of Oxycodone, thirty milligrams. Both the second and third pill bottles were prescribed to the Defendant. Sgt. Conner explained that the second pill bottle, Xanax, contained twenty pills

_____

[1] The video did not have audio because the "audio pack" was being repaired.

[2] He explained that he believed the straw was drug paraphernalia but admitted that she was not charged with that offense.

and three halves, but the bottle noted that only nine pills were prescribed. He also explained that the third pill bottle, containing Oxycodone, had just been written seven days earlier for 190 pills but only contained five pills at the time of arrest.

Sgt. Conner testified that the Defendant's husband came to the scene to pick up her car and that he overheard Mr. Hall tell the Defendant, "I told you this was going to happen, and sooner or later it was going to happen." According to Sgt. Conner, the Defendant never refuted her husband's statement. In concluding its proof, the State admitted several certified documents illustrating the Defendant's prior involvement with drugs.

The Defendant also testified at the sentencing hearing. She told the court that she lived with her husband and two children, ages nine and four. The Defendant explained that she was employed as a certified nurse's assistant working with an eighty-eight-year-old woman who had Alzheimer's disease and that her employer had written a letter to the court explaining how good she was at her job. The Defendant also explained that she was responsible for caring for her children during the day because she was allowed to take them to work with her and that her husband was unable to do so. She also testified about some personal hardships that she had dealt with over the last few years: a prior drug problem, for which she attended drug court; multiple injuries sustained from a car wreck, requiring long-term use of painkillers; and the death of her father, precipitating her use of Xanax.

The Defendant testified that she had taken Oxycodone the morning of November 8, 2010, and that she had also taken Xanax. She stated that she did not believe she was impaired. The trial court then asked the Defendant a series of questions regarding her plans for eradicating her issue of drug dependency. The Defendant explained that she had already been weaning herself off of the Oxycodone and Xanax and that she only had a few pills remaining. She also suggested that she should get a sponsor and join a twelve-step program. While the Defendant acknowledged that she had tried that before, unsuccessfully, she insisted that this time would be different because it was not mandatory; she was "doing it on [her] own."

In sentencing the Defendant, the trial court utilized the sentencing considerations typically reserved for imposing felony sentences because it thought they were "important in misdemeanor sentencing" as well. First, the trial court considered whether confinement was necessary to protect society by restraining a person who has a long history of criminal conduct. The trial court stated, "from the video it's clear to the Court that Mrs. Hall was severely impaired" and suggested that the traffic stop was an "intervening event" that was fortunate for the Defendant, her family, and the community because she could have caused an accident and killed one of them or someone else. However, the trial court doubted that the facts rose to the level of making confinement necessary to protect society. Turning to the

second sentencing consideration, the trial court did find that confinement was necessary to avoid depreciating the seriousness of the offense, explaining that this was not the Defendant's "first experience with abuse of drugs.  She has a long history of it, four prior convictions, probation, violation of probation, failure at drug court."  Finally, the trial court determined that less restrictive measures had been applied unsuccessfully to the Defendant, noting that probation nor drug court "seemed to work."  Also, the trial court was impressed with the statement that the Defendant's husband made to her at the scene: that he had warned her that "this was going to happen sooner or later."

After considering applicable enhancement factors, the Defendant's criminal history and past difficulty in complying with the conditions of release, and finding no mitigating factors, the trial court sentenced the Defendant to eleven months and twenty-nine days for DUI.  Regarding the Defendant's convictions for speeding and violating the financial responsibility law, the trial court imposed a thirty-day sentence for each offense, to run concurrent to Count 1.[3] The sentence was to be served on probation except for twenty consecutive weekends in jail.  The trial court further imposed a $350 fine and revoked the Defendant's license for one year.  As a condition of probation, the Defendant was required to get a sponsor, get involved with a twelve-step program, attend at least three meetings each week, undergo a drug and alcohol assessment and follow all recommendations, and to cease her use of Oxycodone unless approved by the court.

## ANALYSIS

The Defendant contends that the trial court erred in failing to grant her full probation. The State responds that the trial court properly determined that the Defendant's offenses required some form of incarceration and properly denied full probation.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act.  See Tenn. Code Ann. § 40-35-302(b).  A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served."  Tenn. Code Ann. § 40-35-302(a).  A misdemeanor sentence, unlike a felony sentence, has no sentence range.  State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App.1997).

---

[3] The trial court did not impose fines for Counts 2 and 3.

The trial court is allowed greater flexibility in setting misdemeanor sentences than felony sentences. State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The trial court should consider enhancement and mitigating factors in making its sentencing determinations; however, unlike the felony sentencing statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute "merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). In misdemeanor sentencing, the trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e)(1)-(2). The trial court is required to set a percentage of the sentence that the defendant must serve before becoming eligible for certain release programs. Tenn. Code Ann. § 40-35-302(d). Such percentage must not be more than seventy-five percent. Tenn. Code Ann. § 40-35-302(d).

The standard of review for misdemeanor sentencing is de novo with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d)(2010). However, the record must reflect that the trial court considered the relevant facts, circumstances, and sentencing principles, or the presumption fails. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

A defendant seeking full probation bears the burden of showing that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting Hooper v. State, 201 Tenn. 156, 297 S.W.2d 78, 81 (Tenn. 1956)), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history, and present condition, the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

Although the Defendant was not convicted of a felony, the trial court noted the following felony sentencing considerations.

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C); see also Hooper, 29 S.W .3d at 5. A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); Boston, 938 S.W.2d 435 at 438. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

In the instant case, the trial court was guided by the above sentencing considerations in making its determination. The trial court found that incarceration was necessary to avoid depreciating the seriousness of the Defendant's offenses and that less restrictive measures had been frequently or recently applied to the Defendant. In sentencing the Defendant, the trial court noted that the Defendant had a history of criminal conduct involving drugs and determined that some form of incarceration was necessary. The record reflects that the trial court properly considered the principles of sentencing and all the relevant facts and circumstances in imposing the Defendant's sentence. Therefore, the Defendant has failed to meet her burden and is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE