IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs February 26, 2019

**STATE OF TENNESSEE v. DAVID KEITH WALKER**

**Appeal from the Criminal Court for Hamilton County**
**Nos. 297341, 297464, 298582, and 298584     Tom Greenholtz, Judge**

_____

**No. E2018-00795-CCA-R3-CD**

_____

The Defendant, David Keith Walker, pled guilty to aggravated burglary, theft of property valued at $500 or less, burglary, vandalism, and two counts of theft of property valued at $1,000 or more. The trial court imposed a total effective sentence of fifteen years' incarceration.  On appeal, the Defendant contends that he is a suitable candidate for alternative sentencing pursuant to the statutory considerations outlined in Tennessee Code Annotated section 40-35-103.  Following our review, we affirm the trial court's denial of alternative sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and JAMES CURWOOD WITT, JR., JJ., joined.

Michael L. Acuff, Chattanooga, Tennessee, for the Appellant, David Keith Walker.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zetner, Assistant Attorney General; M. Neal Pinkston, District Attorney General; and AnCharlene Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

The Defendant in this case was indicted on multiple offenses stemming from break-ins and thefts of several under-construction homes in Hamilton County.  On January 27, 2016, the Defendant was indicted on one count each of aggravated burglary,

theft of property valued at more than $500, burglary, vandalism valued at $500 or less, and two counts of theft of property valued at $1,000 or more. See Tenn. Code Ann. §§ 39-14-105, -14-402, -14-403, -14-408. On October 10, 2017, the Defendant pled guilty on all charges. By agreement, the Defendant received concurrent sentences for his aggravated burglary and burglary convictions, concurrent sentences for his theft of property valued at $1,000 or more convictions, and concurrent eleven-month and twenty-nine-day sentences for his vandalism and theft of property valued at $500 or less convictions. The Defendant's ten-year and five-year sentences were to run consecutively for an effective fifteen-year sentence. The Defendant's misdemeanor sentences were to run concurrently. The trial court was to determine the Defendant's manner of service.

The sentencing hearing to determine the Defendant's manner of service proceeded as follows. At the beginning of the hearing, the trial court acknowledged the presentence report and the amended presentence report. Prior to the beginning of testimony, the prosecutor referred to the Defendant's plea agreement. As stipulated in the agreement, the Defendant pled guilty on the aforementioned charges with an effective sentence of fifteen years.

At the sentencing hearing, the Defendant testified that upon his March 30, 2015 release from custody on parole, he had contacted multiple halfway homes but was unsuccessful finding a placement. In the alternative, the Defendant planned to live with his brother, stating that he wanted to "find a place to stay until [he] could save some money to be able to get [his] own place." The Defendant was unable to reach his brother via telephone. The Defendant contacted the co-defendant in this case, Harry Gilley, and asked him to pick him up from jail. The two men used drugs on the day of Defendant's release from custody. The Defendant was arrested on October 13, 2015 for the charges in this case.

While on parole from March 2015 to October 2015, the Defendant worked odd jobs in construction and landscaping. During this time, the Defendant lived sporadically with co-defendant Gilley, a short time with his brother, and with a companion, Brenda Porter. The Defendant admitted that he had not been cooperative with law enforcement when approached in October 2015. The Defendant agreed that he had spent more than half of his adult life in custody, including convictions for twelve felonies and seventeen misdemeanors.

As of the sentencing hearing, the Defendant testified that he had been in custody for two and a half years since his October 2015 arrest. During this time, the Defendant explained he had been active in the jail workforce, doing laundry and transporting supplies. The Defendant received several letters of support from various officers at the Hamilton County jail. The Defendant also described in detail his involvement with

various study programs, including the Rock of Ages prison ministry study, Hope Bible Study, the House of Refuge program, and "Mayas" Walk. The Defendant stated he had obtained brochures and financial aid information about an HVAC technician degree from Chattanooga State Community College and planned to pursue this degree if he were released from custody.

On cross-examination, the Defendant agreed that he was nineteen years old when he committed his first offense. He also agreed that his criminal history was "pretty bad" and that he had been on parole when he committed the offenses listed above. The Defendant confirmed that at the time he was released on parole, he had been in custody for three years and had previously served a ten-year sentence. The Defendant also confirmed that he had already been on probation and had been arrested with co-defendant Gilley on two previous occasions. The Defendant agreed that the night of his October 2015 arrest with co-defendant Gilley, he was not truthful with law enforcement officers about breaking and entering into a home to steal a stove. He testified that he and co-defendant Gilley would "just get together and do drugs sometimes." The Defendant confirmed that the two had entered four different homes and left with stolen property while together. The Defendant also testified that he had previously violated his probation "probably around five" times.

At the sentencing hearing, the State called Nerren Pratt to give testimony. Mr. Pratt is a co-owner of Pratt Homeowners, a business that builds residential homes in Hamilton County. Mr. Pratt testified that in 2015, some fifty homes had been broken into. Most of these break-ins were near the end of construction. Usually, a crow bar was used to break in the back door, the home was left dirty and damaged, and appliances were taken from the premises. Mr. Pratt stated that his company felt "like we lost a lot of sales because of people were [sic] concerned about the security" of the neighborhoods where break-ins were occurring. Mr. Pratt testified that since the Defendant and Gilley "were captured, we've had zero break-ins and zero thefts."

Additionally, the State called Hannah Rooker, a probation and parole officer who works as a presentence investigator. Ms. Rooker testified that according to the Defendant's presentence report, his first conviction was in 1988, at the age of nineteen, for unlawful drug paraphernalia use and his most recent conviction was in 2013, at the age of forty-four, for theft of property. Ms. Rooker stated that the Defendant had been convicted of twelve felonies and seventeen misdemeanors.

At the sentencing hearing, David McNabb, the executive director of the Teen Challenge Midsouth Adult Center in Chattanooga, testified that the Defendant had previously completed an eighteen-month program. When questioned about the Defendant's becoming a counselor for the program, Mr. McNabb testified that he was not

in a position to confirm if the Defendant was placed in a counselor position. Mr. McNabb was able to confirm that usually only participants who do very well in the Challenge are given the opportunity to become a counselor.

The Defendant called Jonathan Johnson to testify as the court liaison for the House of Refuge. He described the House of Refuge as providing a place for participants to live, aid in finding jobs, and aid in organizing finances. Mr. Johnson stated that he knew of the Defendant because the Defendant had contacted him via phone. Mr. Johnson had visited the Defendant at the Hamilton County jail to have him fill out an application for the program. Mr. Johnson confirmed that the Defendant had been accepted into the program, were he to be released.

In rebuttal, the State called Detective Brian Ashburn who was assigned to the property crimes division at the time of the Defendant's arrest. Detective Ashburn was involved with surveillance of the Defendant in October 2015. Detective Ashburn testified that after spotting "what looked like to be an appliance in the back of the Jeep Cherokee," the Defendant and Mr. Gilley were stopped and placed into custody. Detective Ashburn interviewed the Defendant in an attempt to recover some of the stolen items. Detective Ashburn confirmed that the stove appliance in the back of the Jeep Cherokee had been illegally removed from a residence built by Mr. Pratt's company.

The trial court found that the Defendant was not a favorable candidate for alternative sentencing. The trial court noted the Defendant's long criminal history, history of substance abuse, and participation in multiple revocation proceedings while the Defendant was on parole. The court also found that the Defendant's failure to cooperate with law enforcement indicated an indifference towards the victims in this case.

Following the arguments of counsel, the trial court imposed a sentence of fifteen years' incarceration. The Defendant filed a late notice of appeal, and this court waived the timely filing. The case is now before us for review.

**ANALYSIS**

On appeal, the Defendant contends that the trial court abused its discretion by its complete denial of any alternative sentence. The Defendant argues that "the court had available options to order further additional time without ordering the entirety of the fifteen years in confinement," pursuant to the statutory criteria of Tennessee Code Annotated section 40-35-103. The Defendant offers several arguments in support of his position. First, the Defendant notes that he "had already been incarcerated approximately nine hundred (900) days. . . at the time of sentencing." Secondly, Defendant offers that he "took responsibility for and felt remorse for his conduct," and he wants "the opportunity

-4-

to pay restitution." The Defendant further maintains that while he was in custody, he "attempted to change the mental framework that allowed him to commit his offenses" and planned "to have transition services" available if released. As evidence, the Defendant offers that he had "been gainfully employed when previously released." The Defendant submits that he has "exhibited exemplary conduct while in custody" and that many of "his actions were influenced by his involvement with drugs." The State responds that the trial court properly exercised its discretion when it ordered the Defendant to serve his fifteen-year sentence in confinement based on his criminal history, the need to avoid depreciating the seriousness of the offenses, and the previous failed attempts at using less restrictive measures. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's in-range sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Bise, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

No longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347. Tennessee Code Annotated section 40-35-102(6) is now only advisory. See Tenn. Code Ann. § 40-35-102(6)(D). In addition, a Range III, persistent offender is not considered a favorable

candidate for alternative sentencing options. See Tenn. Code Ann. § 40-35-102(6)(A); see also Carter, 254 S.W.3d at 347.

A trial court should consider the following when determining any defendant's suitability for alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

In this case, the trial court found that the Defendant could not be considered a favorable candidate for alternative sentencing, stating "it's uncontested, [the Defendant has a] criminal histor[y] that evince[s] a clear disregard for the laws and morals of society; and …[the Defendant is] being sentenced today as a Range 3 offender." The trial court continued and identified the specific factors it considered in its decision to sentence the Defendant to fifteen-years' confinement. The trial court found that the Defendant had "a long history of substance use" and that it was "a mystery to the [c]ourt why [the Defendant] would not seek further treatment in the intervening time" when referring to the Defendant's long history of drug use. The trial court found that the Defendant had been a party to revocation proceedings "maybe around five times" and that the offenses in this case were committed while the Defendant was on parole. The trial court noted that the Defendant did not cooperate with law enforcement to recover the victim's property in this case and that this "behavior [was] a callous indifference toward the victims in the case, and would weigh against finding of an alternative sentence." The trial court found that the Defendant had twelve felony convictions and seventeen misdemeanor convictions, including "eleven of those [were] for theft, aggravated burglary or attempted burglary." The Defendant had been released on parole and his "criminal conduct resumed by way of continued drug use that very day."

-6-

Upon review, we conclude that the trial court had more than substantial evidence to order the Defendant to serve his fifteen-year sentence in confinement. After being released on parole, the Defendant admitted to taking drugs and engaging in criminal activity that very same day. The Defendant admitted to entering homes in Hamilton County on four different occasions to take property. The Defendant refused to cooperate with law enforcement after being arrested. Given these facts, confinement is necessary to avoid depreciating the seriousness of the offense, to protect society, because of the Defendant's long criminal history, and is needed to provide for an effective deterrent to others who would commit similar offenses. The trial court properly considered the sentencing principles in its alternative sentencing decision. Accordingly, the Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness.

## CONCLUSION

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE