IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 5, 2019

**STATE OF TENNESSEE v. TORY BLACKMON**

**Appeal from the Criminal Court for Shelby County**
**No. 15-00959    Lee V. Coffee, Judge**

_____

**No. W2018-01061-CCA-R3-CD**

_____

The Defendant, Tory Blackmon, was convicted by a Shelby County Criminal Court jury of attempted first degree murder, a Class A felony; employing a firearm during the commission or attempted commission of a dangerous felony, a Class C felony; and aggravated assault, a Class C felony. *See* T.C.A. §§ 39-12-101(a)(1)-(3) (2018) (criminal attempt), 39-13-202(a) (2014) (subsequently amended) (first degree murder), 39-13-102(a) (2014) (subsequently amended) (aggravated assault), 39-17-1324(b)(2) (2014) (subsequently amended) (armed dangerous felonies). The court imposed a twenty-year sentence for attempted first degree murder, a six-year sentence for the employing a firearm conviction, and a four-year sentence for aggravated assault. The court merged the aggravated assault conviction with the attempted first degree murder conviction, and it ordered the firearm conviction to be served consecutively to the attempted murder conviction as required by Tennessee Code Annotated section 39-17-1324(e)(1) (2014) (subsequently amended). On appeal, the Defendant contends that the court erred in sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Gerald S. Green (on appeal), and Joseph McClusky (at trial), Memphis, Tennessee, for the Appellant, Tory Blackmon.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; Jeffrey D. Jones and Jamie Bowers Kidd, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions relate to his September 25, 2014 shooting at the victim, who was his daughter's mother, as the victim left work. A juvenile court hearing was scheduled for the following day to establish the Defendant's obligation for child support for their daughter.

At the trial, the victim testified that she and the Defendant had been coworkers and had been sexually involved. After the victim became pregnant, she and the Defendant remained on friendly terms until the Defendant learned in Summer 2013 that the baby was a girl. The victim said the Defendant stopped communicating with her, although they remained coworkers. She said the Defendant's learning the child was a girl was the reason the relationship ended. She said they had not fought or had a contentious breakup. She said that their daughter was born in September 2013. The victim said that the Defendant was not involved with their daughter and that the victim sought to establish paternity and child support through the juvenile court. She said that the Defendant initially did not appear for a paternity test but that he appeared after a warrant was issued. She said the paternity test showed that the Defendant was the child's father.

The victim testified that she left work on the evening of September 25, 2014, around 11:00 p.m. She said that as she slowed at a stop sign, she saw the Defendant jump from behind a car and point a gun at her. She said she was able to see him in her headlights. She said the Defendant fired four or five shots at her, striking her car. She said she ducked and drove home. She said that until the shooting, she had not seen the Defendant for about one year and that they had known each other for about one and one-half years.

The State offered testimony of police officers relative to consensual searches of the Defendant's and the Defendant's cousin's SUVs, which were conducted after the Defendant arrived at juvenile court the next day. The Defendant had arrived in his SUV and had entered his cousin's SUV after he arrived. The contents of the Defendant's cousin's SUV included a loaded .40-caliber handgun. The contents of the Defendant's SUV included latex gloves and a box of .38-caliber ammunition, an Arminius Titan Tiger .38-caliber revolver, two prescription medication bottles labeled with the Defendant's name, a camouflage backpack, and the Defendant's work identification badge. The .38-caliber revolver contained six cartridge casings. A firearms expert was unable to determine whether the cartridge casings collected as evidence had been fired from the .38-caliber revolver.

The jury found the Defendant guilty of the charged offenses. At the sentencing hearing, the State offered a handwritten statement from the victim as evidence. In the statement, the victim stated that even though the Defendant had been in jail after the

incident, she had been afraid someone else would harm her. She said that she had been unable to eat and sleep and that she had lost weight after the incident. She said she had psychological problems after the incident and described hearing noises and thinking someone was going to kill her. She said she was afraid the Defendant would kill her after he was released.

The presentence report reflects that the Defendant was age thirty-one on the date of the sentencing hearing. He was a high school graduate and reported he had last worked for the same employer as the victim, although the presentence officer was unable to verify the past employment. The Defendant reported that he had one child and a brother and that he planned to live with his parents after his release. No prior criminal history was reported. The Defendant denied alcohol and drug use.

The Defendant did not offer proof at the sentencing hearing. In sentencing the Defendant, the trial court applied enhancement factors based upon the victim's particularly great physical or emotional injuries and the Defendant's use or employment of a firearm during the offense. *See* T.C.A. § 40-35-114(6), (9) (2014) (subsequently amended). The court stated that factor (9) applied to Count 1, the attempted first degree murder conviction, but did not apply to Count 2, the firearm offense, and Count 3, the aggravated assault. The court weighed the enhancement factors heavily. The court found that the evidence did not support the application of any mitigating factors. *See id.* § 40-35-113 (2014). The court sentenced the Defendant to twenty years for Count 1, six years for Count 2, and four years for Count 3. The court merged Count 3 with Count 1 and imposed consecutive service of Count 2 with Count 1 by operation of law. *See id.* § 39-17-1324(e)(1). This appeal followed.

The Defendant contends that the trial court sentenced him excessively based upon the erroneous application of enhancement factor (6). The State counters that the Defendant has not shown that the trial court abused its discretion in sentencing the Defendant. We agree with the State.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103, -210; *State v. Moss*, 727

S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

We note, first, that the Defendant's sentence for the firearm offense was statutorily set at six years, and the trial court did not have discretion to establish a sentence of a different length. *See* T.C.A. § 40-35-1324(h)(1) (subsequently amended) (specifying that the sentence shall be six years). As such, we limit our review to the court's sentencing determinations regarding the attempted first degree murder and aggravated assault convictions.

The Defendant argues that the evidence of the victim's psychological trauma from the crimes was limited to the victim impact letter submitted at the sentencing hearing, which he argues "is subject to exaggeration and hyperbole," and he notes the lack of evidence that the victim received counseling or other mental health treatment. Curiously, he argues, "All victims of crime, certainly victims of rape, must surely experience mental trauma, no two crimes are exactly the same, and no two victims react to a crime in the same manner." We note that the Defendant was not convicted of a sexual offense.

With regard to the type of proof necessary to support the application of enhancement factor (6), our supreme court has said that expert testimony is not required and that lay testimony or a victim impact statement detailing specific, objective examples of the crime's effect on the victim is appropriately relied upon by a trial court. *See State v. Arnett*, 49 S.W.3d 250, 261 (Tenn. 2001). "Particularly great injuries are not essential to the commission of [attempted first degree murder], but prove greater culpability." *State v. Nix*, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). Although this enhancement factor is inappropriate for cases of aggravated assault in which serious bodily injury is an element, the indictment in this case charged the Defendant with aggravated assault by causing the victim to reasonably fear imminent bodily injury. *See State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994).

The record reflects that even though the Defendant was in jail, the victim thought someone else would kill her. She was fearful, as well, that the Defendant would kill her after his release. She was unable to eat and sleep, and she lost weight following the shooting. She said she had psychological problems and described hearing noises and thinking someone was going to kill her. The victim impact statement describes specific, objective examples of the long-lasting and significant effects that the Defendant's conduct had and continued to have on the victim. The trial court did not abuse its discretion in applying enhancement factor (6).

The Defendant also argues that the trial court failed to apply any mitigating factors, but he has not identified the mitigating factors he claims the court should have applied and the evidence which would support the application of those factors. We decline to speculate in this regard. *See* Tenn. Ct. Crim. App. R. 10(b) (stating that issues which are not supported by argument are waived).

As a Range I offender, the Defendant faced a sentence of fifteen to twenty-five years for attempted first degree murder and three to six years for aggravated assault. The trial court imposed mid-range sentences of twenty and four years, respectively. Upon review, we conclude that the Defendant has failed to show that the court abused its discretion in establishing the length of these sentences.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE